875 P.2d 150

**S & R PROPERTIES, an Arizona general partnership, a property taxpayer in Maricopa County, Petitioner–Appellee, Cross Appellant,**

**and**

**Don and Vicky Lamb, individual residents and property taxpayers in Maricopa County; Millie L. Henderson, an individual resident and property taxpayer in Maricopa County; Ruben E. and Gloria Schneider, individual residents and property taxpayers in Maricopa County; Karl F. and Joan Kohlhoff, individual residents and property taxpayers in Maricopa County; Carlos E. and Shirlene M. Ontiveros, individual residents and property taxpayers in Maricopa County; William Garcia, individual resident and property taxpayer in Maricopa County; Bill Johnson's Restaurants, Inc., an Arizona corporation, a property taxpayer in Maricopa County; Makoto and Yaeko Sagawa, individual residents and property taxpayers in Maricopa County; Jeff Low, individual resident and taxpayer in Maricopa County; Charles T. and Geraldine N. Gavan, individual residents and property taxpayers in Maricopa County; Sanner Contracting Co., an Arizona cor-**

---

492

poration, a property taxpayer in Maricopa County; Douglas W. Hauser and Ronald L. Sigler, individual residents and property taxpayers in Maricopa County; Joe R. and Angelita S. Gama, individual residents and property taxpayers in Maricopa County; Ohlinger Industries, Inc., an Arizona corporation, a property taxpayer in Maricopa County; Donna and Benjamin Goo, individual residents and property taxpayers in Maricopa County; 3250 Properties, an Arizona general partnership, a property taxpayer in Maricopa County; Boise Cascade Corporation, a Delaware corporation, a property taxpayer in Maricopa County; Glen A. and Vernell Jones, individual residents and property taxpayers in Maricopa County; Claire U. and Pearl Walker, individual residents and property taxpayers in Maricopa County; and S. Herbert Glendenning, individual resident and property taxpayer in Maricopa County, Petitioners–Appellees,

v.

MARICOPA COUNTY, a political subdivision of the State of Arizona; Paul Waddell, in his capacity as director of the Arizona Department of Revenue, a department of the State of Arizona; Glenn O. Stapley, in his capacity as the Maricopa County Treasurer; Ira Friedman, in his capacity as the Maricopa County Assessor; James Bruner, Carole Carpenter, Thomas Freestone, Edward Pastor and Betsey Bayless, in their capacities as members of the Maricopa County Board of Supervisors, Defendants–Appellants, Cross Appellees.

No. 1 CA–TX 91–0024.

Court of Appeals of Arizona,
Division 1, Department T.

Sept. 28, 1993.

Review Denied June 21, 1994.

Helm & Kyle, Ltd. by Roberta S. Livesay, John D. Helm, Ileen K. Keenan, Tempe, for defendants-appellants, cross-appellees Maricopa County, et al.

Mohr, Hackett, Pederson, Blakely, Randolph & Haga, P.C. by Robert E. Jacobson, Azim Q. Hameed, Phoenix, for petitioners-appellees, and petitioner-appellee, cross-appellant.

## OPINION

TOCI, Presiding Judge.

The taxpayers brought separate special actions in the tax court, claiming that each taxpayer's property had been misclassified, and that as a result, each had paid excessive real property taxes for the years 1985 through 1989. They also alleged that Maricopa County ("the County") and the Arizona Department of Revenue ("DOR") failed to perform duties required by law in refusing to respond to their refund requests and to negotiate in good faith with their agent. The taxpayers requested refunds of the excess taxes pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") sections 11–505 and –506 (1990).[1]

The County appeals from the tax court judgment directing it to consider and respond to the taxpayers' claims. The County's appeal also challenges the tax court's decision to award the taxpayers attorneys' fees pursuant to A.R.S. section 12–2030 (Supp.1992). Appellant S & R Properties cross-appeals from the tax court's ruling reducing the fees award to approximately 35% of the amount requested.

The primary issues are (1) whether property taxes paid in error may be refunded under former A.R.S. sections 11–505 and –506, independently of the appeal procedure in A.R.S. section 42–204(E) (1991), and (2) whether the 1991 amendment to A.R.S. section 11–506 (Sup.1992), which excludes from the reach of the statute questions of valuation that can be appealed according to Title 42, A.R.S., and limits refund claims to those involving "clerical or computation error," retroactively defeats the taxpayers' claims. Our answer to the second question turns on whether retroactive application of the amendment to A.R.S. section 11–506 would violate due process by depriving the taxpayers of a substantive vested right.

We hold that the taxpayers' special actions under A.R.S. section 11–506 are not untimely classification appeals. We further hold that section 42–204(E), which provides that a taxpayer dissatisfied with the valuation or classification of his property may appeal to the superior court, does not preclude the taxpayers from seeking a refund under section 11–506 for clear and indisputable classification or valuation errors. In addition, the tax court was correct in holding that the County

---

1. Although taxpayers cite both statutory sections, their arguments focus on section 11–506 and, therefore, most of our discussion relates to that statute.

and the DOR must respond to the taxpayers' refund claims by determining whether the County made an erroneous assessment. We also hold that if the County made a clear and indisputable error in the valuation or classification of the taxpayers' property, former section 11–506 confers a vested substantive right to a refund on the taxpayers. The legislature may not, therefore, impair that right by the adoption, with explicit retroactive intent, of amended section 11–506. Finally, we reverse the tax court's reduction in attorneys' fees and remand for a hearing on this issue.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Taxpayers and Their Properties

The taxpayers in these consolidated appeals are owners of property in Maricopa County classified either as class 3 (commercial) or class 6 (residential-rental). *See* A.R.S. § 42–162 (1991 and Supp.1992). Those whose properties had been classified as commercial filed claims with the Maricopa County Assessor ("Assessor") asserting that only a portion of each property was actually commercial. Those whose properties were classified as residential filed claims asserting that the properties qualified as class 5, owner-occupied residences. The taxpayers filed their claims by February 28, 1989. Each requested a refund, pursuant to A.R.S. sections 11–505 and –506 of portions of the taxes paid in error in 1985, 1986, 1987, and 1988.

The Assessor failed or refused to review, process, or investigate the basis or validity of any of the taxpayers' requests for reclassification. In at least eleven other cases involving either these taxpayers or others, however, the Assessor investigated requests made by letter or telephone and made classification changes. Although all the taxpayers brought actions in the tax court to obtain refunds, only those taxpayers in cause Nos. TX–89–

01164 and TX–89–01166 filed an administrative appeal of the 1990 classifications of their properties. The Assessor reclassified the latter properties from class 6 rental to class 5 owner-occupied for the tax year 1990 due to obvious classification errors.

### B. This Litigation

Each taxpayer's complaint asked the tax court to direct the County Board of Supervisors and the director of the DOR to authorize and direct the Maricopa County Treasurer to refund tax overpayments with interest pursuant to sections 11–505 and 11–506. Each complaint also requested an award of attorneys' fees.

The County and the DOR responded separately to the taxpayers' complaints. The County moved to dismiss on the ground that special action relief was inappropriate under A.R.S. section 11–506. The County argued that section 42–204(E)[2] precluded the taxpayers from contesting classifications or valuations under sections 11–505 and –506. DOR filed answers alleging that the taxpayers' complaints failed to state claims against it and that the DOR was only a "nominal party" to this litigation.

The tax court consolidated all cases for the purpose of oral argument and consideration of the County's motion to dismiss. After briefing and argument, the tax court denied the County's motion to dismiss because the court felt it did not have adequate information to resolve it. The court accepted jurisdiction of the taxpayers' special actions.

The County and the taxpayers thereafter filed cross-motions for summary judgment. After argument, the tax court denied the County's motion for summary judgment and granted the taxpayers' motion. The tax court held that the County had "an implied duty" under A.R.S. section 11–506 to respond to the claims, to determine whether it erred, and then to grant or deny the claims. Addi-

**2.** A.R.S. § 42–204 provides in relevant part:
 C. Within one year after payment of the first installment of the tax, an action may be maintained to recover any tax illegally collected, and if the tax due is determined to be less than the amount paid, the excess shall be refunded in the manner provided by this title. . . .

 D. The department shall be a party to any action brought pursuant to this section.
 E. Any taxpayer dissatisfied with the valuation or classification of his property may appeal to the superior court only in the time and manner prescribed in § 42–176, subsections A, B and C or § 42–246, whichever is applicable.

tionally, the court held that each taxpayer was entitled to pursue his section 11–506 claims without having previously obtained a determination that the County had erroneously assessed his property.

The taxpayers filed applications for sums totalling $77,124.50 as attorneys' fees pursuant to A.R.S. section 12–2030. The County opposed the application and requested an evidentiary hearing. Before the hearing, the County caused subpoenas *duces tecum* to be issued for each of the taxpayers and their counsel and had them all served on the taxpayers' counsel. The taxpayers moved to quash the subpoenas. At the evidentiary hearing, the tax court declined to quash the subpoenas but ruled that the subpoenas for the taxpayers had been improperly served on their attorneys. The tax court later ruled that the taxpayers were entitled to fees pursuant to A.R.S. section 12–2030, and it awarded $26,667.00 of the $77,124.50 the taxpayers had sought.

We have jurisdiction pursuant to A.R.S. sections 12–2101(B) (1982) and 12–120.1 (1992).

## II. ANALYSIS

### A. Taxpayer Challenges to Valuation or Classification of Property

■ We will first address the question of the retroactivity of amended A.R.S. section 11–506 in order to determine whether it or the earlier version applies to these taxpayers' claims. In making this determination, we apply the rule that statutes, although normally prospective in application, may apply retrospectively when the legislature has clearly expressed that intention *and* the statute does not impair a vested substantive right. See *Allen v. Fisher,* 118 Ariz. 95, 96, 574 P.2d 1314, 1315 (App.1977). We conclude that the amendment may impair vested substantive rights, and if so, it cannot apply to bar these taxpayers' claims.

About the time the taxpayers filed this appeal but before briefing in this court, the legislature significantly amended A.R.S. section 11–506. As amended by 1991 Ariz.Sess. Laws 1656, 1657, section 11–506 now provides:

(A) If all or a part of a property tax has been paid on an erroneous assessment after such assessment is first verified by the county assessor and then verified by the department of revenue, the county board of supervisors shall direct the county treasurer to grant a refund to the taxpayer, ... within three years after the payment of such erroneous tax. Such claim shall be processed in the same manner and subject to the provisions as provided in § 11–505.

(B) For purposes of this section, an erroneous assessment is *limited to a clerical or computational error or any other error not involving the exercise of discretion, opinion or judgment by the assessor or the department. This section does not apply to questions of valuation that can be appealed according to § 42–221 or 42–604.* An erroneous assessment does not include an assessment that is uniformly made according to department of revenue guidelines for all similarly classified property.

(Emphasis added.)

The 1991 Ariz.Sess.Laws, 1656, 1657 provide:

Section 1. Intent

The purpose of §§ 2 through 5 of this act is curative in nature and is intended to clarify statutory intent and ratify historical administrative interpretation, and does not provide for any substantive change in the law.

. . . .

Section 8. Retroactivity

Sections 1 through 5 of this act apply retroactively to tax years beginning from and after December 31, 1985.

In view of the express retroactivity of amended section 11–506, this court directed that the parties' briefs "discuss whether and to what extent, if at all, the 1991 amendment of A.R.S. section 11–506 may affect the resolution of these appeals."

The County contends that the 1991 amendment merely clarified existing tax law; retroactive application of the statute to this litigation renders the taxpayers' actions moot; and in the alternative, retroactive application impairs no vested substantive rights of the taxpayers. Taxpayers, on the other hand,

argue that the retroactive application of the amendment violates due process because it impairs vested substantive rights they held under the pre-amendment version of section 11–506. *See Hall v. A.N.R. Freight System, Inc.,* 149 Ariz. 130, 139–40, 717 P.2d 434, 443–44 (1986). Before its amendment, section 11–506 provided:

> If all or a part of a property tax has been paid on an erroneous assessment after such assessment is verified by the department of revenue, the county board of supervisors shall direct the county treasurer to grant a refund to the taxpayer, to the extent of the erroneous tax paid pursuant to such erroneous assessment after correcting the tax roll, provided the taxpayer submits a claim therefor to the county treasurer within three years after the payment of such erroneous tax. Such claim shall be processed in the same manner and subject to the provisions as provided in § 11–505.

We must decide the following: first, whether the taxpayers have property interests or rights under pre-amendment section 11–506 that are substantial and present so as to qualify for due process protection; second, whether the rights are both substantive and vested; and third, whether the amendment retroactively impairs those rights.

### 1. Taxpayers Have Property Interests Subject to Due Process Protection

 "[D]ue process protection vests only when a person has a liberty or property interest that is a protectible interest." *Maricopa County v. Superior Court,* 170 Ariz. 248, 254, 823 P.2d 696, 702 (App.1991). To be protectible, the property interest must be substantial and present. *Id.* Clearly, the taxpayers have a substantial and present property interest in taxes paid pursuant to statute and in a refund of taxes paid on an assessment that the DOR verifies to have been "erroneous."

### 2. Taxpayers Have Substantive Right

 Do the taxpayers have a substantive right under pre-amendment section 11–506? "Uniformly, the substantive law is that part of the law which creates, defines and regu-

lates rights; whereas the ..., remedial or procedural law is that which prescribes the method of enforcing the right or obtaining redress for its invasion." *State v. Birmingham,* 96 Ariz. 109, 110, 392 P.2d 775, 776 (1964). "A rule affecting the measure of damages is a substantive right." *Allen,* 118 Ariz. at 97, 574 P.2d at 1316 (statute requiring medical malpractice claim to be heard first by medical liability review panel cannot be applied retroactively). We conclude that the right to a refund created by section 11–506 is similar to a right to collect damages and thus is substantive rather than procedural.

### 3. Taxpayers May Have a Vested Right

 Even substantive rights may be abrogated, however, if they have not "vested." *Hall,* 149 Ariz. at 139, 717 P.2d at 443. The critical question is whether the taxpayer's right to a refund vested before the 1991 amendment. According to *Hall,* "a right vests only when it is *actually assertable as a legal cause of action* or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust." *Id.* at 140, 717 P.2d at 444. In other words, the right cannot be contingent or inchoate. *Id.* (citing *Steinfeld v. Nielsen,* 15 Ariz. 424, 465, 139 P. 879, 896 (1914)) (rights contingent when they come into existence based upon occurrence of future event); *see also Brown Wholesale Elec. Co. v. H.S. Lastar, Co.,* 152 Ariz. 90, 94, 730 P.2d 267, 271 (App.1986) ("It is well-settled that rights are not vested if they are qualified by contingencies."); *State v. Estes Corp.,* 27 Ariz.App. 686, 688, 558 P.2d 714, 716 (1976) ("A 'vested right' is an immediate fixed right to present or future enjoyment where the interest does not depend upon a period or an event that is uncertain.").

We conclude that the taxpayers here did not gain a vested right to a refund by simply filing a claim under preamendment section 11–506. That section states: "If all or a part of a property tax has been paid on an erroneous assessment *after such assessment is verified by the department of revenue,* the county board of supervisors shall direct the county treasurer to grant a refund to the taxpay-

er...." (Emphasis added.) Consequently, the mere filing of a refund claim does not grant a property right in a refund as a present interest; the right is contingent upon verification of an erroneous assessment by the DOR. That verification may not occur. On the other hand, if the County processes a refund claim and the DOR verifies that the tax was paid on an erroneous assessment, the taxpayers will have a vested substantive right to a refund. *See Arizona Telco Fed. Credit Union v. Arizona Dep't of Revenue,* 158 Ariz. 535, 764 P.2d 20 (App.1988).

Here, the taxpayers filed claims in 1989, well before the legislature amended section 11–506, and at a time when the language of the statute offered the County little basis for refusing to consider refund claims. Nevertheless, the County assessor failed to review, process, or investigate the claims to determine whether an erroneous assessment occurred. Consequently, until the County makes that determination, the taxpayers' entitlement to a refund is an open question.

■ By refusing to act at all, the Assessor cannot, however, escape its obligation to verify an erroneous assessment that is clear and indisputable either from the County's own records or from the taxpayer's claim. Hence, we affirm the tax court's order directing the County to review these claims. In considering the claims, if the DOR confirms that an erroneous assessment has been made, the taxpayers have a vested right. Conversely, if the DOR denies a refund based on a finding that the claimed erroneous assessment is not clear and indisputable, the taxpayer has no vested right. The DOR's decision, of course, is subject to special action review. A.R.S. § 12–124; *see also Telco,* 158 Ariz. 535, 764 P.2d 20. If a reviewing court later determines that in one or more of these cases the DOR abused its discretion in refusing to verify a clear and indisputable erroneous assessment, the taxpayer's right to a refund vests.

### 4. 1991 Amendment to Section 11–506 Not Simply A Clarification

■ Having determined that a vested, substantive right to a refund may exist in the taxpayers, we must determine whether the amended version of section 11–506 impairs that vested substantive right. To do so, we must decide whether the amendment merely clarifies the earlier version of section 11–506, as the County claims, or represents a substantive change in section 11–506.

By amending the statute, the legislature is entitled to enlarge or restrict its scope; it also may simply clarify ambiguities about the statute's scope without either enlarging or restricting that scope. The difficulty arises, however, when the legislature adopts significant changes that it then seeks to apply to taxpayer claims filed long before the amending legislation. Because we are not persuaded that the 1991 amendment simply "clarified" the scope of the 1974 statute, the retroactive application of the amendment represents a substantive change in the pre-existing law that, if it impairs vested substantive rights of these taxpayers, violates due process.

■ The legislative history of the 1991 amendment states that its purpose is "curative in nature ... and ... [is] not [to] provide for any substantive change." 1991 Ariz. Sess.Laws. 1656, 1657. Nevertheless, "[t]he presence of 'curative' language, or a recital that the legislature in the past really intended what is now being enacted into law cannot render a statute immune from constitutional challenge on retroactivity grounds. If it did, any retroactive legislation could be shielded from a successful constitutional attack merely by the insertion of such language." *Washington Nat'l Area Ltd. Partnership v. Treasurer, Prince George's County,* 287 Md. 38, 410 A.2d 1060, 1069 (Ct.App.1980), *cert. denied,* 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980).

The legislative history surrounding the adoption of section 11–506 in 1974, which is admittedly sparse, does not reveal any original legislative intent to limit refunds to a particular type of error. Neither does the one case interpreting preamendment section 11–506 support the argument that a refund is limited to a particular kind of error. See *Telco,* 158 Ariz. at 539–40, 764 P.2d at 24–25. In *Telco,* Division Two of this court did not restrict the right to a refund to errors of a

particular type. The court simply noted that Telco's property had been mistakenly classified by the county assessor for three years prior to 1986 and that as a result of Telco's 1986 tax appeal, the taxing authorities had conceded the mistake and changed the classification. Thus, Telco was entitled to a refund.

The evolution of sections 11–505 and 506 support the conclusion that the right to a refund under pre-amendment section 11–506 did not depend on the type of error made by the assessor. *See State v. Sweet,* 143 Ariz. 266, 271, 693 P.2d 921, 926 (1985) (legislative intent can be derived from development of statute). The legislature amended section 11–505 in 1970; the statute provided a refund for tax overpayments resulting from a "clerical error in billing." 1970 Ariz.Sess.Laws 783–84. In 1974, by adopting section 11–506, the legislature created an additional right to a refund if the DOR verified an erroneous assessment.[3] One year later, the legislature amended section 11–505 and deleted the requirement that a billing error be "clerical." 1975 Ariz.Sess.Laws 346. The development of these statutes, therefore, clearly suggests that the legislature intended to broaden the scope of section 11–506 to encompass "verifiable" assessment errors, not just clerical or billing errors. In 1978, the legislature amended both sections 11–505 and –506 to expand the time for requesting a refund from one to three years.

The 1991 amendment to section 11–506, however, departs from this legislative intention. The 1991 amendment now specifically defines erroneous assessment in subsection (B) to include only "a clerical or computational error." Consequently, the legislature, by a new and more restrictive definition of "erroneous assessment," retroactively redefined a substantive right. *Accord Rio Rico Properties v. Santa Cruz County,* 172 Ariz. 80, 91, 834 P.2d 166, 177 (Tax Ct.1992). The amendment does not simply clarify the 1978 version of the statute; instead, it restricts the appli-

cation of the 1978 statute. This, the legislature may not do retroactively.

Finally, we note that the 1991 amendment modifies the 1978 version of section 11–506 in several other ways. For example, it states that the refund statute does not apply to questions of valuation that "can be appealed according to section 42–221 or 42–604." On the other hand, the 1978 version of the statute contains no reference of any kind to the appeal statutes. The 1991 amendment also for the first time excludes from the definition of erroneous assessment "an assessment that is uniformly made according to [DOR] guidelines for all similarly classified property." Finally, unlike the 1978 version of section 11–506, which required the erroneous assessment be verified only by the DOR, subsection (A) adds a requirement that both the County assessor and the DOR verify the error.

In summary, we are persuaded that the 1991 amendment works a substantive change in the law. Consequently, if the DOR confirms that erroneous assessments have been made, these taxpayers have vested, substantive rights to a refund. Because the amendment goes beyond the scope of clarifying original legislative purpose and impairs these vested rights, it cannot apply retroactively. *Hall,* 149 Ariz. at 140, 717 P.2d at 444. Therefore, the taxpayers' refund rights will be governed by the 1978 version of section 11–506. In determining the scope of that statute, we now turn to the County's argument that a tax appeal is a prerequisite to a refund under 11–506.

**B. Taxpayers Right To Refund For Clear And Indisputable Error Exists Independent of Appeal**

■ We conclude that neither 42–204(E) nor a taxpayer's failure to appeal in the current tax year precludes a refund for erroneous assessments if refund claims are filed within the three-year period provided by sections 11–506 and the taxpayer's claim or the

---

**3.** The original bill granted a refund to a taxpayer who had paid a tax "for an improvement that was not on the property at the time of the assessment . . ., or that was actually misclassified as to quality of construction, misgraded as to components or was mismeasured." H.B. 2211, 31st

Legis. (1974). These are not necessarily clerical or computational errors. Although the language of the statute as adopted was taken from Senate revisions, this history supports an inference that the legislature intended to authorize refunds for a variety of errors.

County's own records reveal a clear and indisputable error. If the DOR verifies the error, the taxpayer's right to a refund vests.

 Neither the statutes in title 29 nor those in title 11 clearly describe the interaction between the appeal process and the refund process. The parties urge alternative interpretations, and because we find the statutes ambiguous, we resort to rules of statutory construction. *Sweet*, 143 Ariz. at 269, 693 P.2d at 924. In reconciling two or more statutes, we will construe and interpret them to give effect to one another. *Pima County by City of Tucson v. Maya Const. Co.*, 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988). "[T]he various provisions of our tax statutes are to be read together and ordinarily construed as a whole." *State ex. rel. Arizona Dep't of Revenue v. Chastain*, 137 Ariz. 240, 242, 669 P.2d 1017, 1019 (App.1983).

The County argues that the tax appeal process in sections 42–176, –177, and –246 is the exclusive means for challenging property tax classifications in Arizona and that the November 1 filing deadline for such appeals is jurisdictional. Thus, according to the County, the taxpayers' special actions under section 11–506 actually constitute untimely classification appeals. The County argues that without a prior appeal to establish an error, no basis exists for it or the DOR to verify the error and grant a refund.

 The County's argument continues that an "erroneous assessment" correctable within the three-year time period specified in A.R.S. section 11–506 cannot include questions of valuation or classification. Otherwise, it argues, inconsistent time periods within which a taxpayer may seek relief create an irreconcilable conflict between the appeal provisions in title 42 and the refund provisions in section 11–506. The County, again assuming that a request for a refund is an appeal disguised as a refund claim, cites section 42–204(E) for support. That section requires payment of tax before a taxpayer may test the validity or amount of a tax and in subsection (E) provides: "Any taxpayer dissatisfied with the valuation or classification of his property may appeal to the superior court only in the time and manner prescribed in § 42–176 ... or § 42–246, which-

ever is applicable." Finally, the County asserts that because the court in *Telco* failed to consider the impact of section 42–204(E) on the taxpayer's right to a refund, *Telco* is both distinguishable from the instant case and fundamentally flawed.

Rejecting the County's argument, we adopt the view of the court in *Telco* that section 11–506 is a simple, alternative means of correcting indisputable assessment errors. The refund process commences with the filing of a "claim," and no additional language suggests the claim must be submitted or adjudicated in an adversarial setting. Rather, the statute appears to contemplate a method by which a taxpayer can call to the attention of the DOR an alleged error and obtain relief if the error is indisputable. *Hoyle v. Superior Court*, 161 Ariz. 224, 227, 778 P.2d 259, 262 (App.1989) (what statute implies is as much a part of it as what it expresses). As long as the taxpayer files a claim within three years of having paid an erroneous assessment, and the DOR verifies the error, section 11–506 directs a refund.

 This construction of the statutory scheme presupposes that the error, which only requires "verification," will be one plainly and indisputably revealed by the County's own records or the taxpayer's claim. Certainly a taxpayer who appeals in the current year and establishes an erroneous assessment for the year of the appeal may more assuredly claim a refund for prior years than a taxpayer who does not appeal. *See Telco*, 158 Ariz. at 537, 764 P.2d at 22. However, we do not believe that the taxpayer can *never* obtain a refund for prior years without having appealed in the current tax year. If the November 1 deadline for filing an appeal has passed when a taxpayer discovers an error, and the error is clear and indisputable either from the County's own records or the taxpayer's claim, DOR should verify that error, and the County should issue a refund without the necessity of a formal appeal. *See Telco*, 158 Ariz. at 540, 764 P.2d at 25.

On the other hand, if an alleged erroneous assessment cannot be determined without the resolution of disputed issues of fact and the assessment of credibility of witnesses,

and such error has not been adjudicated in the appeal process, it is not an error that can be "verified" by DOR. The function of the appeal process is to resolve disputed issues of fact and law between the taxpayers and the taxing authority. We believe the legislature did not intend for the refund process to be used as a forum to litigate such issues. Consequently, a taxpayer who fails to appeal an alleged erroneous assessment, the determination of which depends on the adjudication of disputed issues of fact or law, may not litigate his right to a refund under section 11–506.

The County argues that in *Telco*, the taxpayer first appealed from a classification error and later sought a refund for prior years. Here, argues the County, those taxpayers who did not follow the same appeal procedure are not entitled to recover. We disagree. In *Telco*, the taxpayer credit union did not discover until 1986 that its property had been placed by the County in class 3 instead of in class 4 with all other credit unions. The credit union then successfully appealed the property's valuation for the current tax year and requested a refund for excess taxes paid in error in three prior years. Although the taxpayer's appeal exposed the error and resulted in the County making the appropriate classification change, the decision appears to rest on the clear and indisputable nature of the erroneous assessment. Consequently, we believe the credit union in *Telco* would have been entitled to a refund even had it discovered the error after the deadline for an appeal had expired.

We agree that title 42 statutes contemplate that a taxpayer who objects to the classification or valuation of his property will appeal within the time limits set by those statutes. Generally, a taxpayer who fails to do so will have no remedy, even if he later discovers an error. Section 11–506, however, is a remedial statute that grants a remedy both to a taxpayer who successfully appeals in the current year and who paid excess taxes in prior years and to a taxpayer who has not appealed but who discovers a clear and indisputable error after November 1 of the current tax year. The latter taxpayer should receive a refund if he makes a claim within three years

of the payment of excess taxes. "An honorable government would not keep taxes to which it is not entitled." *Pittsburgh & Midway Coal v. Arizona Dep't of Revenue,* 161 Ariz. 135, 139, 776 P.2d 1061, 1065 (1989).

■ Finally, our interpretation of the statutory scheme favors the taxpayer and is preferable to the County's construction. "Tax statutes are to be strictly construed against taxing authorities and any ambiguities are to be resolved in favor of the taxpayer." *Jim Click Ford, Inc. v. City of Tucson,* 133 Ariz. 97, 98, 649 P.2d 714, 715 (App.1982). Adopting a liberal view of section 11–506 avoids clogging both the administrative appeal and the judicial appeal processes with easily resolved matters and is an additional avenue of relief for the taxpayer who may have paid excess taxes. *See Rio Rico Properties,* 172 Ariz. at 92, 834 P.2d at 178 (legislature intended section 11–506 as an administrative remedy outside title 42 judicial or quasi-judicial process for correcting indisputable mistakes of fact).

### C. Attorneys' Fees Pursuant to A.R.S. Section 12–2030

#### 1. County's Appeal

■ The County raises two arguments against the granting of attorneys' fees to the taxpayers. First, the County contends that the taxpayers were not entitled to an award of attorneys' fees under A.R.S. section 12–2030 because they were not the prevailing parties seeking mandamus relief in a civil action. The County points out that the taxpayers' original prayers for relief requested only refunds. We cannot agree, however, that because the taxpayers failed to obtain refunds, they were not prevailing parties under A.R.S. section 12–2030. The taxpayers' complaints necessarily involved a demand for enforcement of A.R.S. section 11–506 and thus asked for relief in the nature of mandamus. In addition, the issue ultimately litigated was whether A.R.S. section 11–506 required the County to respond to the taxpayers' claims. The tax court determined the County was so required. Thus, mandamus relief was appropriate, and the taxpayers were prevailing parties. *Exodyne Properties*

*v. City of Phoenix,* 165 Ariz. 373, 798 P.2d 1382 (App.1990).

■ The County next argues that insufficient evidence exists of an attorney-client relationship between the taxpayers and their counsel, and thus the taxpayers are not entitled to an award of fees. We disagree. The affidavit of attorney Robert Jacobson directly averred his representation of taxpayer S & R Properties in the instant litigation. The fact that a corporate agent retained the services of counsel on the taxpayer's behalf does not vitiate the attorney-client relationship. *See generally* Restatement (Second) of Agency § 79 and comments; *Fickett v. Superior Court,* 27 Ariz.App. 793, 558 P.2d 988 (1976).

### 2. Service of Subpoenas

■ Before the evidentiary hearing on the taxpayers' application for attorneys' fees, Maricopa County caused subpoenas to be served in the name of each individual taxpayer at the offices of their attorneys, tendering no witness or mileage fees. In doing so it relied on the portion of Rule 45(d), Arizona Rules of Civil Procedure, which states: "When the subpoena is issued on behalf of the state or an officer or agency thereof, fees and mileage need not be tendered."

The taxpayers moved to quash the subpoenas. At the evidentiary hearing, the court held that "while Maricopa County is a necessary party with the Department of Revenue, Maricopa County is not an agent of the State for purposes of the last sentence of Rule 45(d)." The court concluded that the subpoenas were not properly served; they should have been served not on the attorneys but upon the individuals, with fees and mileage tendered. The court, nevertheless, declined to quash them, and the hearing proceeded.

The County now contends that the tax court erred in its ruling that the subpoenas should have been served on the taxpayers. We disagree. When the tax court denied the taxpayers' motion, the County neither moved for orders enforcing the subpoenas nor for a postponement of the hearing. We find it difficult to understand how the tax court's ruling directly aggrieved the County.

The tax court was also correct in its analysis that the County should have tendered attendance and mileage fees to the taxpayers. Rule 5(a), Arizona Rules of Civil Procedure, does not apply to the service of subpoenas, and accordingly Rule 5(c) did not authorize the County to serve subpoenas on the taxpayers by delivering them to their counsel. Service of subpoenas is governed exclusively by Rule 45(d), Arizona Rules of Civil Procedure, which provides in part:

> Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person and by tendering to that person the fees for one days attendance and the mileage allowed by law. When the subpoena is issued on behalf of the state or an officer or agency thereof, fees and mileage need not be tendered.

A county assessor may technically be referred to as an "agent" of the state for the purpose of determining the valuation of property. A.R.S. § 42-221(A). The County, however, cites no authority whatsoever for the proposition that Maricopa County itself is an "agency" of the state within Rule 45(d), Arizona Rules of Civil Procedure.

### 3. Taxpayers' Cross–Appeal

■ The taxpayers contend that the trial court abused its discretion in awarding them less attorneys' fees than they requested. The County, however, cites *Tucson Gas & Elec. Co. v. Larsen,* 19 Ariz.App. 266, 506 P.2d 657 (1973), for the proposition that this court lacks jurisdiction to consider the cross-appeal because the taxpayers failed to challenge the amount of their recovery through a motion for new trial in the tax court. We disagree. In *Larsen,* the plaintiff was awarded damages after a trial to the court. The defendant appealed the question of liability. The plaintiff cross-appealed, contending that the damages awarded were inadequate as a matter of law. Division Two of this court stated:

> Questions relating to the amount of recovery or extent of the relief granted will not be considered on appeal unless previously presented to the trial court on motion for new trial. *Roche v. Casissa,* 154 Cal. App.2d 785, 316 P.2d 776 (1957); *Schrib v.*

*Seidenberg,* 80 N.M. 573, 458 P.2d 825 (1969).

*Larsen,* 19 Ariz.App. at 268, 506 P.2d at 659. Contrary to the County's implicit contention that we lose jurisdiction of the cross-appeal, *Larsen* merely holds that the damages issue is waived.

Further, on the waiver issue, *Larsen* is questionable authority. Division Two cited two non-Arizona cases on that point. The decision of the California Court of Appeal in *Roche v. Casissa* was expressly based on a provision of the California Civil Code with no direct analogue in Arizona. *See Roche,* 316 P.2d at 777–78. The corresponding Arizona statute provides in pertinent part:

> On an appeal from a final judgment the supreme court shall not consider the sufficiency of the evidence to sustain the verdict or judgment *in an action tried before a jury* unless a motion for a new trial was made.

A.R.S. § 12–2102(C) (emphasis added). In both *Larsen* and the instant case, the court made factual determinations sitting without a jury. Therefore, the taxpayers' cross-appeal, and the question it raises, are properly before us.

■ The taxpayers point to several factors in support of their contention that the tax court abused its discretion in awarding them reduced fees. They emphasize the importance of the issues raised before the court, and contend that the tax court disregarded the impact on the taxpayers of the "unrelenting war that the County waged." They assert that the tax court's reduction of the requested fees undermines the policy behind A.R.S. section 12–2030. Finally, they argue that deposing various county and state officials was necessary to show the County's routine procedure for processing taxpayer claims under A.R.S. sections 11–505 and –506

was independent of the appeal procedures set forth in Title 42.

In response, the County argues that the tax court's ruling came after an extensive evidentiary hearing on the issue of attorneys' fees. The County also contends that the taxpayers initially sought to recover refunds and, only after extensive litigation, sought an order directing the County to investigate their claims. The County also points to the legislature's 1991 amendments to A.R.S. section 11–506 to justify the "vigor" with which the County defended.

The tax court awarded attorneys' fees pursuant to A.R.S. section 12–2030,[4] which mandates recovery by prevailing parties of "reasonable and necessary attorney fees." The court found the taxpayers' request of $77,-124.50 excessive, but also found that the County's vigorous resistance to the requested relief "unduly protracted the litigation." The court awarded fees for time spent preparing the first petition for special action and for defending against various motions for relief sought by the County. The court refused to award fees for time "spent in conference among attorneys in the same firm" and "for the time spent amending the Complaint to ask for attorneys' fees, for depositions, [or] for the preparation of the first form of judgment." The court found that the ultimate issues did not warrant "very much tactical study." The court then reduced the remaining time entries by either two-thirds or one-half.

■ We review the amount of attorneys' fees awarded to the taxpayers under an abuse of discretion standard. *Gilbert v. Board of Medical Examiners of Arizona,* 155 Ariz. 169, 185, 745 P.2d 617, 633 (App.1987). Although trial courts have wide discretion in determining the amount of attorneys' fees, the award must have a reasonable basis in

---

4. A.R.S. § 12–2030 states:

 A. A court shall award fees and other expenses to any party other than this state or any political subdivision thereof which prevails by an adjudication on the merits in a civil action brought by the party against the state or any political subdivision thereof to compel a state officer or any officer or any political subdivision thereof to perform an act imposed by law as a duty on the officer.

 B. As used in this section, "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, repert, test or project found by the court to be necessary for preparation of the party's case, and reasonable and necessary attorney fees.

the record. *Id.* "The trial court abuses its discretion as to attorneys' fees only when its view would not be taken by a reasonable [person]." *Moser v. Moser*, 117 Ariz. 312, 315, 572 P.2d 446, 449 (App.1977).

Although the tax court concluded that the case should not have generated "a lot of esoteric lawyering," we conclude that, because the taxpayers' twenty-one special actions involved important, difficult, and intricate legal issues, the case required extraordinary representation. Furthermore, the taxpayers' attorneys were required to spend additional time on the case as a result of the County's unreasonable tactics in resisting the relief sought by the taxpayers. On this point, the tax court made a specific finding that the County's "intransigence unduly protracted the litigation."

Consequently, we conclude that no reasonable basis exists for the tax court to arbitrarily reduce the attorneys' fees for time spent by the taxpayers' attorneys conferring with one another and with a paralegal. We recognize that, in some instances, such time may not be reasonably necessary and thus will not be recoverable by the prevailing party. After reviewing the taxpayers' application for attorneys' fees and considering the background of this case, however, we think that the consultations among attorneys and paralegals in the taxpayers' law firm were not a needless duplication of effort. On the contrary, we think that the old adage, "two heads are better than one," is particularly appropriate when applied to the issues in this case. One of the benefits of law firm representation is the synergistic effect of conferences between various members of the firm. Nothing in this record supports the conclusion that it was unreasonable for the taxpayers' attorneys to consult with one another and with a paralegal about the best way to protect and advance their clients' interests.

In addition, the court abused its discretion by refusing to award the taxpayers fees for the time spent in taking depositions. The depositions were taken by the taxpayers to establish the County's unofficial, yet routine, procedure for processing refund claims under sections 11–505 and –506, and to establish that such claims were handled independently of the administrative and judicial appeal procedures set forth in Title 42. The County's routine procedure might have provided evidence of its interpretation of section 11–506 and thus warranted the tax court's deference in interpreting the statute. *See Fund Manager, Pub. Safety Personnel Retirement Sys. v. Tucson Police and Fire Public Safety Personnel Retirement Sys. Bd.*, 147 Ariz. 1, 6, 708 P.2d 92, 97 (App.1985) ("Consistent, uninterrupted administrative interpretation of legislation, although not binding on the court, will, if not manifestly erroneous, be accepted and followed."). Although the tax court could discern no reason for taking the depositions, we conclude that a "reasonable and prudent lawyer" might very well have taken the depositions. *See Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 188, 673 P.2d 927, 932 (App.1983) (prevailing parties are entitled to recover reasonable attorneys' fees for every service that would have been undertaken by a reasonable and prudent lawyer).

Nevertheless, even if the court rejected the legal theory that the taxpayers pursued in the taking of such depositions, the taxpayers, as prevailing parties, do not forfeit their right to recover attorneys' fees for the depositions. *See China Doll*, 138 Ariz. at 189, 673 P.2d at 933 (prevailing party entitled to attorneys' fees for time spent on unsuccessful legal theories). Furthermore, the taxpayers' counsel resorted to taking the depositions only after the County unreasonably rejected the taxpayers' offers to stipulate to the existence of the County's refund procedures. Consequently, we conclude that the record fails to establish any reasonable basis for the trial court's refusal to include in the fee award the time spent by the taxpayers' attorneys in taking these depositions.

Likewise, the court erred in refusing to include in its award the time spent by taxpayers' attorneys amending the petitions to request attorneys' fees. Although the claim for attorneys' fees under section 12–2030 might have been foreseen when the taxpayers filed their original petitions, we know of no legal principle that penalizes a party who fails to include every possible claim for relief in the original petition. *See*

*Vinson v. Marton & Assoc.*, 159 Ariz. 1, 4, 764 P.2d 736, 739 (App.1988) ("A person cannot be forced to elect before the conclusion of trial the theory he will advance or the remedy he will seek."). On the contrary, the Arizona Rules of Civil Procedure and case law establish a liberal policy of allowing parties to amend pleadings so that cases will be decided on their merits. Ariz.R.Civ.P. 15(a)(1); *Owen v. Superior Court*, 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982). To some extent, that policy is thwarted by a rule that denies the recovery of attorneys' fees for time spent amending pleadings. The tax court's exclusion of time spent in amending the petition to request attorneys' fees contravenes the well-established policy of freely granting leave to amend and is an unreasonable basis for reducing the taxpayers' award of attorneys' fees.

Similarly, the court erred in refusing to award fees for the time spent in drafting the first form of judgment. The paragraph added by the taxpayers' attorneys to the proposed form of judgment stated that "pursuit of a claim pursuant to A.R.S. section 11–505 and A.R.S. section 506 does not require a previous successful determination ... that there has been an erroneous assessment." Although that language goes beyond the verbatim language of the minute entry, the language in paragraph two of the proposed judgment can be reasonably implied from the tax court's minute entry ruling. The taxpayers prevailed on the issues; they should not be penalized because their attorneys added this particular paragraph to the proposed form of judgment. The County's objections to the first form of judgment were sustained, but the taxpayers do not forfeit their right to recover fees for the preparation of this pleading. *See China Doll*, 138 Ariz. at 189, 673 P.2d at 933 ("[W]here a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories.").

Finally, we conclude that the tax court abused its discretion in arbitrarily reducing the balance of the attorneys' fees by deducting either one-third or one-half from the remaining time entries. The tax court failed to demonstrate, and we are unable to find, any reasonable basis in the record for this action. We, therefore, reverse the award of attorneys' fees and remand for a hearing consistent with this opinion to determine a reasonable fee based upon a consideration of the factors set forth in *China Doll*, 138 Ariz. at 187, 673 P.2d at 931.

### D. Attorneys' Fees on Appeal

Finally, the taxpayers request an award of attorneys' fees pursuant to A.R.S. sections 12–349 and –2030 in connection with the County's appeal and their own cross-appeal. We determine that neither the County's appeal nor its defense to the taxpayers' cross-appeal meet any of the criteria for punitive attorneys' fees awards provided by A.R.S. section 12–349(A)(1) through (4).[5] We grant the taxpayers an award of attorneys' fees on appeal pursuant to A.R.S. section 12–2030. The taxpayers may establish the amount of their award by complying with Rule 21(C), Arizona Rules of Civil Appellate Procedure.

### III. CONCLUSION

The taxpayers, if their claims of erroneous assessments are verified by DOR, have vested substantive rights under the pre-amendment version of section 11–506 that cannot be impaired by the 1991 amendment. The County cannot decline to examine the taxpayers' claims to a refund on the ground that the taxpayers did not appeal. The County must examine the refund claims to determine whether a clear and indisputable error exists. If a taxpayer's claim or the County's own

5. A.R.S. § 12–349(A) provides:
 Except as otherwise provided by and not inconsistent with another statute, in any civil action commenced or appealed in a court of record in this state, the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party, including this state and political subdivisions of this state, if the attorney or party does any of the following:
 1. Brings or defends a claim without substantial justification.
 2. Brings or defends a claim solely or primarily for delay or harassment.
 3. Unreasonably expands or delays the proceeding.
 4. Engages in abuse of discovery.

records reveal such an error, the DOR must verify the error, and the board of supervisors shall direct the County treasurer to grant appropriate refunds. In addition, the taxpayers are prevailing parties entitled to an award of reasonable attorney's fees. The tax court abused its discretion by arbitrarily reducing the amount of the taxpayers' fee requests. We, therefore, affirm the tax court's judgment regarding the County's duties under section 11–506 and reverse the tax court's award of attorneys' fees. On remand, the tax court shall hold a hearing and award reasonable attorneys' fees to the taxpayers consistent with this opinion.

CLABORNE and FIDEL, JJ., concur.