916 P.2d 1149

**FIRST INTERSTATE BANK OF ARIZONA, a corporation, Petitioner, Plaintiff–Appellant, Cross–Appellee,**

v.

**STATE of Arizona DEPARTMENT OF REVENUE, Respondent, Defendant–Appellee,**

and

**Pima County, a body politic and corporate; Ed Moore, Dan Eckstrom, Mike Boyd, Paul Marsh and Raul Grijalva, as members of the Pima County Board of Supervisors; Alan Lang, in his capacity as Pima County Assessor; and James L. Kirk, in his capacity as Pima County Treasurer, Respondents, Defendants–Appellees, Cross–Appellants.**

No. 1 CA–TX 94–0018.

Court of Appeals of Arizona, Division 1, Department T.

Dec. 19, 1995.

Reconsideration Denied Feb. 23, 1996.

Review Denied May 21, 1996.

Munger and Munger by John F. Munger and Mark E. Chadwick, Tucson, for Plaintiff–Appellant, Cross–Appellee.

Stephen D. Neely, Pima County Attorney by Peter E. Pearman, Deputy County Attorney, Tucson, for Defendants–Appellees, Cross–Appellants.

Grant Woods, the Attorney General by Michael F. Kempner and Ileen K. Keenan, Assistant Attorneys General, Phoenix, for Defendant–Appellee.

## OPINION

KLEINSCHMIDT, Judge.

This case presents a question of how personal property is to be assessed for tax purposes. Every county assessor maintains two tax assessment rolls as required by statute. One is the secured tax roll, referred to in Ariz.Rev.Stat.Ann. ("A.R.S.") section 42–238. The other is the unsecured tax roll provided for in A.R.S. section 42–601. Real property must be placed on the secured roll and personal property must be placed on the unsecured roll if the owner does not own realty in the county worth more than $200. The dispute in this case centers around whether the Pima County Assessor erred in placing the personal property of First Interstate Bank, which owned realty worth more than $200, on the unsecured roll. We will not describe and explain the differences between the two rolls at this point. It is enough to say for the present that the amount of tax due, the time when payment is due, and the effect on a taxpayer's real property may be different depending on which roll the personal property is placed.

The Pima County Assessor's Office sent the Bank a 1992 State of Arizona Business Personal Property Tax Statement which the Bank was to complete so that the Assessor could assess the Bank's taxable property. This tax statement required the Bank to file fifty-seven "Business Personal Property Statement" forms for the 1992 tax year. Apparently each of these forms related to personal property located at different bank branches. The forms contained, among others, the following questions:

3. Do you own the real property on which this personal property is located? Yes ____ No ____. If no, give the name and address of owner _____.

4. If yes, provide the assessor's parcel number of the property: _____.

The Bank filed the forms but did not fill in an answer to either of the questions about real property on any of them. The Assessor placed the Bank's personal property on the unsecured tax roll.

Later, the Bank, in the apparent belief that it would reduce its tax liability, decided that its personal property should have been placed on the secured tax roll. When the Assessor declined the Bank's request that this be done, the Bank filed a combined special action and complaint in the Arizona Tax Court. It named the Arizona Department of Revenue, Pima County and its Board of Supervisors, the County Assessor and the County Treasurer as defendants, asking that its property be placed on the secured tax roll and that a tax refund be granted. The court dismissed the special action and allowed the case to continue on the complaint.

The Bank, based on its interpretation of the statutes, argued that if a taxpayer owns real property of a value of $200 or more in the county, the assessor *must* place the taxpayer's personal property on the secured roll. The tax court concluded that the Assessor correctly placed the property on the unsecured roll because the Bank had not advised the Assessor in the prescribed manner that it owned real property in the county worth more than $200.

The Bank appealed, and the Defendants filed a cross-appeal seeking clarification of the tax court's decision. In their cross-appeal the Defendants ask us to go beyond the tax court's rationale and declare that, even if the Bank had listed real property in excess of $200, the Assessor would not have been compelled to place the Bank's personal property on the secured roll. We agree with the tax court that the failure to complete the forms justified placement of the Bank's personal property on the unsecured roll. We also agree with the Defendants that even if a

taxpayer who owns realty worth more than $200 fills out the requisite forms, the statutes do not compel assessors to place the taxpayer's personal property on the secured roll.

### THE DEPARTMENT IS NOT EQUITABLY ESTOPPED FROM ARGUING THE ISSUE OF THE PLACEMENT OF THE BANK'S PERSONAL PROPERTY ON THE UNSECURED ROLL

█ There is a threshold question that must be resolved before we consider the merits of the Bank's arguments. The Bank contends that the Arizona Department of Revenue is equitably estopped from arguing that the Assessor acted properly in placing the Bank's personal property on the unsecured roll because the Department lost on that issue in *Phoenician Resort Corp. v. Arizona Dep't of Revenue*, No. TX 90–0004 (July 11, 1990), and never appealed the decision in that case. The Bank is attempting the offensive use of collateral estoppel. *See Wetzel v. Arizona State Real Estate Dep't*, 151 Ariz. 330, 333, 727 P.2d 825, 828 (App.1986) (offensive use of collateral estoppel occurs when the party making a claim attempts to assert rulings against its opponent made in a prior judgment to which the one asserting estoppel was not a party). In allowing the offensive use of collateral estoppel, this court, in *Wetzel*, relied on the comment to the Restatement (Second) of Judgments section 29 which explains:

> A party who has had a full and fair opportunity to litigate an issue has been accorded the elements of due process. In the absence of circumstances suggesting the appropriateness of allowing him to relitigate the issue, there is no good reason for refusing to treat the issue as settled....

*Wetzel*, 151 Ariz. at 333–34, 727 P.2d at 828–29 (quoting § 29, cmt. b 1982)). Section 29 lists numerous considerations which must be weighed in considering whether collateral estoppel should apply, including "[o]ther compelling circumstances [that] make it appropriate that the party be permitted to relitigate the issue."

The United States Supreme Court, in *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), considered other compelling circumstances in its decision to preclude the application of offensive collateral estoppel against the federal government. The Court noted that the federal government is a party to a far greater number of cases than even the most litigious private entity and that:

> [a] rule allowing nonmutual collateral estoppel against the Government in such cases would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue.

*Id.* at 159–60, 104 S.Ct. at 572.

The application of offensive collateral estoppel to the present case would present the state government with similar problems. It would be bad policy to require the government, in every instance, to appeal every adverse decision for fear of being foreclosed from relitigating the same issue against a different party in the future. Such a requirement would put an undue burden on the state. Therefore, the Department should not be precluded from relitigating the assessment issue decided in *Phoenician.*

### THE STATUTES DO NOT REQUIRE THE COUNTY ASSESSOR TO PLACE A TAXPAYER'S PERSONAL PROPERTY ON THE SECURED TAX ROLL EVEN THOUGH THE TAXPAYER OWNS REAL PROPERTY WORTH MORE THAN $200

█ The interpretation of several statutes is at the heart of the dispute in this case. Arizona Revised Statutes section 42–601 provides:

> A. When the county assessor determines the valuation of the personal property of persons owning real estate within the county of a value of *less than* two hundred dollars, he shall enter the valuation on a tax roll provided for that purpose to be known as the unsecured personal property tax roll....

(emphasis added). Arizona Revised Statutes section 42–226 provides a limitation on switching personal property between the two rolls:

A. A person owning real property within a county of a value of two hundred dollars or more shall not be permitted to change the listing of his personal property from the secured to the unsecured personal property tax roll, nor from the unsecured to secured tax roll, nor shall the county assessor make such change for the purpose of assessment or collection, until a period of five years has elapsed from the date of the last prior change except that:

1. When a parcel of such person's real property is subject to a bona fide agreement of sale, the change may be made at once.

2. When in the judgment of the county assessor the real property assessed to such person is not of sufficient value to pay both the real and personal property taxes due thereon, the county assessor may require the personal property to be listed on the unsecured personal property tax roll.

3. When such person has a bona fide agreement to sell a portion of his personal property which is listed on the secured property tax roll, the portion to be sold may be placed on the unsecured personal property tax roll at once.

■ The Bank argues that these statutes, together with A.R.S. section 42–238(B) which requires real property to be placed on the secured roll, mandate placement of personal property on the secured roll if the taxpayer has real property worth more than $200. It reasons that, because section 42–601 says that the assessor "shall" place the personal property of a taxpayer owning less than $200 worth of realty on the unsecured roll, and because section 42–221(B) contemplates that some personal property will be listed on the secured roll, it follows that personal property of taxpayers owning realty worth more than $200 *must* be listed on the secured roll. The Bank cites to *Phoenician Resort Corp. v. Arizona Dep't of Revenue,* No. TX 90–0004 (July 11, 1990) for this proposition. Because *Phoenician* is an unpublished decision, it is improper to cite it as authority, and we decline to consider it. *See* Ariz.R.Civ.App.P. 28(c) (providing that "[m]emoranda decisions shall not be regarded as precedent nor cited in any court except for the purpose of estab-

lishing the defense of res judicata, collateral estoppel or the law of the case").

We disagree with the Bank's rationale for several reasons. The most important of these is that the statutes do not say that the personal property of a taxpayer who owns realty worth more than $200 must be placed on the secured roll. The very terms of section 42–226 contemplate that personal property may be shifted between the secured and the unsecured tax rolls. The Assessor had the authority to require the Bank to submit a correct list of all of its taxable property. A.R.S. § 42–223. The Bank returned the forms issued by the assessor but failed, on fifty-seven forms, to supply the real property information requested. The Bank has never alleged that it made a mistake in filling out these forms. It is possible that the Bank initially wanted to have its personal property on the unsecured roll.

From what we glean from the briefs and from oral argument, the practice of the assessors and commercial taxpayers seems to allow a taxpayer who owns realty worth more than $200 to request that its personal property be put on one roll or the other. There are some differences between the way taxes are assessed and collected, depending on which roll personal property is listed, that may be important to taxpayers in deciding how they want their property listed. Taxes assessed on the secured roll are a lien against the taxpayer's real property and are *in rem* obligations whereas taxes assessed on the unsecured roll are personal obligations. A.R.S. §§ 42–312, 42–616. Seizure of a taxpayer's real property for the payment of taxes is available only after the taxes owed on property listed on the secured roll are three years delinquent. A.R.S. § 42–451. The unsecured roll allows for claims against personal property after taxes are thirty days delinquent. A.R.S. § 42–608. If personal property is placed on the secured roll, it may be taxed only if the taxpayer owned the property as of October 31 of the prior year. A.R.S. § 42–221(B). The unsecured roll requires proration for the number of days during the year the property was owned. A.R.S. § 42–601.02. Additionally, secured taxes may be paid in two equal installments whereas unse-

cured taxes are payable in one lump sum. A.R.S. §§ 42–342, 42–608. Based on these differences there may be a number of reasons why a business which owns more than $200 in realty may actually want to have its property placed on the unsecured roll. For example, a business may want to avoid encumbering its property with a tax lien. Additionally, the proration of the tax for property on the unsecured role and the ability to pay the tax in a lump sum may be advantageous to a taxpayer for accounting purposes. Other than A.R.S. section 42–226, which limits switching between rolls, nothing in the statutes precludes the taxpayer and the county assessor from agreeing about the roll upon which property will be listed.

The Bank argues that, notwithstanding the fact that it did not provide the requested real property information, the Assessor knew through its own records that the Bank owned real property valued at more than $200. We do not believe that the Assessor should have had to cross-check his records to see whether the Bank owned real property. Even if he had done that in this case, however, the Assessor would have been without guidance as to which parcel of realty various personal property was to attach. In this regard, we note that pursuant to a recent amendment to the statutes, the Bank's failure to provide the information requested would now require the Assessor to place the Bank's personal property on the unsecured roll. *See* A.R.S. § 42–223 (1992) (amended 1995).

## THE TAX COURT PROPERLY GRANTED THE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT

■ Summary judgment is appropriate when there is no genuine issue as to any material fact and when the moving party is entitled to a judgment as a matter of law. Ariz.R.Civ.P. 56(c). In the instant case, there is a dispute of fact about whether the Bank and the Assessor had a standing agreement to have the Bank's personal property placed on the unsecured roll. The existence of such an agreement would support the Defendant's position in this case but the absence of such an agreement would not have precluded the Assessor from acting as he did.

The only potential problem for the Defendants in terms of achieving summary judgment would occur if the Assessor and the Bank had an agreement to have the Bank's personal property placed on the secured roll. No such agreement was alleged. Therefore, any dispute as to the existence of an agreement is immaterial.

The second factual dispute is whether the Bank actually paid more taxes than it would have paid had its personal property been placed on the secured roll. Neither party has argued, and we do not believe, that a business's tax exposure has any bearing on the issue of whether the statutes require that personal property be placed on the secured tax roll. This dispute, then, is also immaterial. Summary judgment was appropriate.

## THE TAX COURT PROPERLY DISMISSED THE BANK'S SPECIAL ACTION

■ The Bank, combined with its complaint, filed a petition for special action pursuant to A.R.S. section 11–506 in an attempt to recoup allegedly overpaid taxes. The tax court dismissed the special action because the Bank had an adequate remedy by appeal. *First Interstate Bank v. State Dep't of Revenue,* 178 Ariz. 242, 243, 871 P.2d 1178, 1179 (Tax 1994). Section 11–506 provides, in part:

> If all or a part of a property tax has been paid on an erroneous assessment after such assessment is first verified by the county assessor and then verified by the department of revenue, the county board of supervisors shall direct the county treasurer to grant a refund to the taxpayer, to the extent of the erroneous tax paid pursuant to such erroneous assessment, after correcting the tax roll, provided the taxpayer submits a claim on a form approved by the department to the county treasurer within three years after the payment of such erroneous tax.

A.R.S. § 11–506(A). The Bank cites *S & R Properties v. Maricopa County,* 178 Ariz. 491, 875 P.2d 150 (App.1993), for the proposition that the availability of an appeal does not foreclose a special action under A.R.S. section 11–506. In *S & R Properties,* numerous taxpayers brought separate special ac-

tions in the tax court, claiming that each taxpayer's property had been misclassified, and that as a result, each had paid excessive property taxes. The taxpayers requested refunds of the excess taxes pursuant to A.R.S. sections 11–505 and 11–506.

The Bank correctly interprets *S & R Properties* as recognizing A.R.S. section 11–506 as "a simple, alternative means of correcting indisputable assessment errors." *Id.* at 501, 875 P.2d at 160. However, in so doing, the court stated:

> [W]e do not believe that the taxpayer can never obtain a refund for prior years without having appealed in the current tax year. If the November 1 deadline for filing an appeal has passed when a taxpayer discovers an error, and the error is clear and indisputable either from the County's own records or the taxpayer's claim, DOR should verify that error, and the County should issue a refund without the necessity of a formal appeal. [Citation omitted.]
>
> On the other hand, if an alleged erroneous assessment cannot be determined without the resolution of disputed issues of fact and the assessment of credibility of witnesses, and such error has not been adjudicated in the appeal process, it is not an error that can be "verified" by DOR. The function of the appeal process is to resolve disputed issues of fact and law between taxpayers and the taxing authority. We believe the legislature did not intend for the refund process to be used as a forum to litigate such issues. Consequently, a taxpayer who fails to appeal an alleged erroneous assessment, the determination of which depends on the adjudication of disputed issues of fact or law, may not litigate his right to a refund under section 11–506.

*Id.* at 501–02, 875 P.2d at 160–61 (emphasis added).

The Department contends that A.R.S. section 11–506 is only available to a taxpayer to remedy "clear and indisputable" assessment errors, and that this case does not involve such errors. We agree. *S & R Properties* clearly contemplates that a special action under A.R.S. section 11–506 is only

allowable when the assessment error is so obvious that the Department may easily verify it and issue a refund without the need for a formal appeal. The statute provides relief for only those taxpayers who request a refund after disclosing an error so plain that, when revealed, the existence of the error could not reasonably be denied. In such cases, no questions of fact or law must be resolved, thereby making formal court procedures unnecessary. This is not such a case. In order to determine if the tax assessment at issue was erroneous, the tax court would necessarily have to decide disputed legal issues such as whether the County had the authority to place the Bank's personal property on the unsecured roll. *S & R Properties* makes it clear that such factual and legal questions are reserved solely for the appeals process and may not be litigated under A.R.S. section 11–506.

The Bank also contends that the tax court improperly dismissed its special action, arguing that it had stated a claim for "erroneous assessment" under A.R.S. section 11–506. Section 11–506(B) limits "erroneous assessment" to "a clerical or computational error or any other error not involving the exercise of discretion, opinion or judgment by the assessor or the department." Any error in placing the Bank's personal property on the unsecured tax roll was due to an exercise of discretion by the Assessor. The decision whether to audit, what years and returns to include in the audit, whether there were improper classifications, and the information to be assessed during the audit all clearly involve the exercise of the Assessor's discretion. Any error resulting from such discretionary action is specifically excluded from those "erroneous assessments" compensable under section 11–506. Therefore, the tax court properly dismissed the Bank's special action.

It is ordered affirming the decision of the tax court.

THOMPSON, P.J., Department T, and EHRLICH, J., concur.