875 P.2d 169

**E.C. GARCIA AND COMPANY, INC., an Arizona corporation; FRA/Wescon I Limited Partnership, an Arizona limited partnership; John H. Miller Company, Inc., an Arizona corporation; R.C. Samuel & Company, Inc., a Washington corporation; John Does and XYZ Corporations, Plaintiffs–Appellants,**

v.

**ARIZONA STATE DEPARTMENT OF REVENUE; Pima County; Pima County Assessor; Pima County Board of Supervisors; Pima County Treasurer, Defendants–Appellees.**

Nos. 1 CA–TX 90–0024, 2 CA–CV 89–0250.

Court of Appeals of Arizona,
Division 1, Department T.

Nov. 12, 1993.

Reconsideration Denied Nov. 12, 1993.

Review and Cross–Petition for
Review Denied June 21, 1994.*

---

* Feldman, C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

512

Fennemore Craig by Paul J. Mooney, Jim L. Wright and Douglas C. Northup, Phoenix, for plaintiffs-appellants.

Grant Woods, Atty. Gen. by Michael F. Kempner, Asst. Atty. Gen., Phoenix, for defendant-appellee Dept. of Revenue.

Stephen D. Neely, Pima Co. Atty. by Peter E. Pearman, Deputy Co. Atty., Tucson, for appellees Pima County.

## OPINION

KLEINSCHMIDT, Judge.

These consolidated appeals concern attempts by Taxpayers to recover an overpayment of taxes for 1987 on four contiguous parcels of land in Pima County. The Taxpayers' appeal in Pima County Superior Court Cause No. 246360 challenges the superior court's dismissal of their 1987 property tax appeal because of their failure to serve the defendant, Pima County. Their appeal in Arizona Tax Court Cause No. TX 90–00031 challenges the tax court's refusal to accept jurisdiction of their subsequent special action seeking a refund of the same 1987 property taxes pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") section 11–506, the statute which permits refunds for a tax paid under an erroneous assessment.

In October of 1991, we issued our Opinion affirming the judgments of the Superior Court of Pima County and of the Arizona Tax Court in this case. In that part of the decision in which we addressed the refusal of the tax court to take jurisdiction of the special action, we rejected the Taxpayers' argument that there had been an erroneous assessment within the meaning of A.R.S. section 11–506. Our decision turned on an amendment to that statute which became law in 1991, after the Taxpayers had begun their action for a refund.

After we filed our Opinion, the Taxpayers filed a Motion for Reconsideration. We ordered additional briefing on the subject of the retroactive application of the amendment to A.R.S. section 11–506. We heard oral argument on the Motion for Reconsideration, and we requested supplemental briefing on the issue of the retroactivity of the statute. Following the supplemental briefing, we again heard oral argument, and the Motion for Reconsideration was taken under advisement. We now grant the Motion for Reconsideration and vacate our Opinion filed on October 22, 1991. We affirm the judgment of the superior court in Pima County Cause No. 246360 and reverse the judgment of the tax court in Cause No. TX 90–00031.

## FACTS AND PROCEDURAL HISTORY

For several years before 1986, the Taxpayers' real property was used for agriculture and was valued as such for tax purposes. In 1987, however, although the property was still used for agriculture, the Pima County Assessor valued it as non-agricultural property, which increased the amount of the tax for that year.

The Taxpayers filed a timely tax appeal in the Superior Court of Pima County pursuant to A.R.S. sections 42–177 and 42–246, challenging the valuation of their property for 1987. Although both the Arizona Department of Revenue and Pima County were named as defendants as required by A.R.S.

section 42–177(C), the record in the Pima County action contains no affidavit of service of process as required by A.R.S. section 42–177(D).

The Department of Revenue, which had been served with process, moved to dismiss the tax appeal. It argued that the superior court lacked subject-matter jurisdiction because (1) the Taxpayers failed to serve Pima County as required by the statute, and (2) the Taxpayers failed to pay the full amount of the second installment of the 1987 tax bill before it became delinquent on May 1, 1988. The Department further contended that the action had abated pursuant to Rule 6(f), Arizona Rules of Civil Procedure, because the Taxpayers had failed to serve Pima County within one year of the filing of the complaint.

In August of 1989, the Pima County Superior Court granted the Motion to Dismiss "for failure to join and serve an indispensable party." The Taxpayers appealed the Pima County Superior Court's ruling to Division Two of this court. That appeal was docketed as Case No. 2 CA–CV 89–0250.

In March of 1988, before the Department moved to dismiss the 1987 tax appeal, the Taxpayers filed a second action in Pima County Superior Court seeking to recover the alleged overpayment of the 1987 property taxes pursuant to A.R.S. section 42–204(C). Pima County and the Department of Revenue moved to dismiss the second Pima County action on the ground that, pursuant to A.R.S. section 42–204(E) and section 42–246, the action should have been filed no later than November 1, 1987. Through new counsel, who now represent them in this court, the Taxpayers stipulated with Pima County that their second action be dismissed with prejudice.

For the tax year 1988, the Pima County Assessor again valued the Taxpayers' property as non-agricultural. The Taxpayers prosecuted administrative and judicial appeals. In July of 1989, the tax court entered a judgment revaluing the property as agricultural property for 1988. For the tax year 1989, the Pima County Assessor valued two of the Taxpayers' four parcels as non-agricultural property. The Taxpayers appealed these valuations through the administrative process to the Arizona Tax Court. The Taxpayers, the Pima County Assessor, and the Department agreed to the entry of a judgment valuing the two parcels as agricultural property for 1989.

In August of 1989, the Taxpayers' current counsel wrote to the Pima County Treasurer requesting that the Taxpayers' property be revalued as agricultural property for the tax year 1987 and that appropriate refunds for overpayment be issued. The letter invoked A.R.S. sections 11–505 and 11–506. Section 11–505(A), as then written, provided in part:

> The board of supervisors, subject to the prior approval of the department of revenue, may authorize the county treasurer to refund to any taxpayer or his agent, any overpayments of real or personal property taxes resulting from an error in billing such taxes or any duplicate payments of real or personal property taxes provided a claim for such refund is made by the taxpayer or his agent within three years from the date of such duplicate payment or overpayment. . . .

Section 11–506 provided:

> If all or a part of a property tax has been paid on an erroneous assessment after such assessment is verified by the department of revenue, the county board of supervisors shall direct the county treasurer to grant a refund to the taxpayer, to the extent of the erroneous tax paid pursuant to such erroneous assessment after correcting the tax roll, provided the taxpayer submits a claim therefor to the county treasurer within three years after the payment of such erroneous tax. Such claim shall be processed in the same manner and subject to the provisions as provided in § 11–505.

Pima County refused to correct the valuation of the Taxpayers' property for 1987.

In early 1990, the Taxpayers filed a special action complaint in the Arizona Tax Court seeking relief pursuant to A.R.S. section 11–506. Their complaint alleged that the Department of Revenue had agreed that their property had been erroneously assessed in 1988 and 1989 and that Pima County and the Department had agreed to revalue the prop-

erty as agricultural property for those years. In its response to the special action complaint, the Pima County defendants answered in part:

> [T]hese responding Defendants admit that for the tax years 1986, 1988 and 1989, the subject property has been valued as agricultural property for tax purposes. In addition as to the tax year 1987, these responding Defendants admit that if Plaintiffs would have submitted the appropriate documentation or timely appealed valuation of the subject property and paid the taxes before they became delinquent, that the subject property would have been valued as agricultural property for the tax year 1987.

The Pima County defendants and the Department of Revenue separately moved to dismiss the Taxpayers' special action complaint. They advanced at least four separate reasons why their motion should be granted. After argument, the tax court declined to accept jurisdiction of the special action. For purposes of its ruling, the court assumed "that the classification for agricultural use was the correct classification for the property for the entire period relevant to this inquiry." The tax court believed it would be inappropriate to entertain the special action because the issues overlapped with the issues presented on the appeal then pending. The tax court entered a formal judgment in accordance with its ruling, and the Taxpayers timely appealed.

Pursuant to stipulation of the parties, this court ordered the appeal from the tax court's judgment consolidated with the Taxpayers' earlier appeal in Case No. 2 CA–CV 89–0250. We have jurisdiction pursuant to A.R.S. section 12–2101.

### THE APPEAL FROM THE PIMA COUNTY SUPERIOR COURT

■ We first address the Taxpayers' appeal from the Pima County Superior Court's order dismissing their 1987 tax appeal "for failure to join and serve an indispensable party." The Department of Revenue, which was served with process in that action, moved to dismiss on the ground, *inter alia*, that the Taxpayers had failed to serve a copy of the notice of appeal on Pima County or file an affidavit of such service as required by A.R.S. section 42–177(D). Pima County did not formally appear.

On appeal, the Taxpayers urge that the Department of Revenue had no standing to assert the defense of insufficiency of service of process on behalf of Pima County. In our opinion, the Taxpayers mischaracterized the Department's position before the Pima County Superior Court. The Department did not purport to assert rights on behalf of Pima County. Rather, the Department took the position that the Taxpayers' noncompliance with the requirements of A.R.S. section 42–177(D) resulted in the Taxpayers' failure to perfect the tax appeal. The Taxpayers cite no authority for their contention that the Department lacked "standing" to so argue, and we reject it.

■ We conclude from this record that the Pima County Superior Court did not abuse its discretion in dismissing the Taxpayers' property tax appeal based on their failure to serve Pima County with process. Arizona Revised Statutes section 42–177 provides in part:

> C. The clerk of the court shall docket the appeal in the name of the appellant as plaintiff and of the state or county, whichever is appropriate, and the department as defendants....
>
> D. A copy of the notice of appeal shall be served on the defendant or defendants and the state board of tax appeals within ten days of filing, in the manner provided for service of process in the rules of civil procedure or by certified mail. An affidavit showing such service shall be filed with the clerk of the court.

In *Maricopa County v. Arizona Tax Court,* 162 Ariz. 64, 70, 781 P.2d 41, 47 (App.1989), we recently stated:

> In our opinion, the ten-day service requirement of A.R.S. § 42–177(D) can be analogized to the requirement that a plaintiff in a civil action serve the defendant with process within one year from the filing of the complaint. Accordingly, by analogy to Rule 6(f), Arizona Rules of Civil Procedure, a notice of appeal untimely

served under A.R.S. § 42–177 would abate the appeal. Similarly, by analogy to Rule 6(b), the court could grant an extension of time in which the plaintiff could accomplish proper service upon a showing of good cause. Where the plaintiff's failure to accomplish proper service was the result of excusable neglect, the court could grant such an extension even after expiration of the ten-day period.

In response to the Department's Motion to Dismiss, the Taxpayers submitted an affidavit of their former counsel stating that he had instructed his secretary to have Pima County served through the Pima County Attorney's Office, and that he later spoke to two representatives of the Pima County Attorney's Office concerning the Taxpayers' pending tax appeal. Unlike the situation in *Maricopa County v. Arizona Tax Court*, however, the Taxpayers never filed an affidavit demonstrating that they actually served Pima County, either within the required ten-day period or thereafter. Although the Taxpayers were never explicitly given an "opportunity to cure the alleged defect in service," they could have attempted to do so at any time on their own initiative. They did not do so.

In accordance with our opinion in *Maricopa County v. Arizona Tax Court*, 162 Ariz. at 70, 781 P.2d at 47, the Taxpayers' failure to serve Pima County within the ten-day period provided by A.R.S. section 42–177(D) abated their appeal. The Taxpayers presented nothing in the superior court tending to show that their failure to comply with section 42–177(D) was the result of excusable neglect, and evidently never again attempted compliance. The superior court did not abuse its discretion in dismissing the Taxpayers' property tax appeal.

### APPEAL FROM THE ARIZONA TAX COURT

#### A. There Was An "Erroneous Assessment" Within the Meaning of Section 11–506

The Taxpayers, at the time they brought their special action in the tax court, sought recovery pursuant to A.R.S. section 11–506, which at that time read as follows:

If all or part of a property tax has been paid on an erroneous assessment after such assessment is verified by the department of revenue, the county board of supervisors shall direct the county treasurer to grant a refund to the taxpayer, to the extent of the erroneous tax paid pursuant to such erroneous assessment after correcting the tax roll, provided the taxpayer submits a claim therefor to the county treasurer within three years after the payment of such erroneous tax. Such claim shall be processed in the same manner and subject to the provisions provided in § 11–505.

The parties dispute whether the assessor made an "erroneous assessment" within the meaning of this provision. The Taxpayers' argument relies heavily on the ruling in a case decided by Division Two of this court, *Arizona Telco Federal Credit Union v. Department of Revenue*, 158 Ariz. 535, 764 P.2d 20 (App.1988). In our original Opinion, we did not decide this question because we held that an amendment to A.R.S. section 11–506, which was passed after that case was decided, eviscerated *Telco* and precluded the Taxpayers' recovery. For reasons which we will ultimately explain, we do not believe that the amendment to the statute can apply retroactively. We turn first to a consideration of whether the assessor made an "erroneous assessment" within the meaning of A.R.S. section 11–506 as that statute read prior to the amendment.

*Telco* is the only case which discusses the statute before it was amended. In *Telco*, a non-profit credit union owned property in Phoenix that was classified as commercial property for the tax years 1983 through 1986. In 1986, after learning of a departmental policy that placed credit unions in a more favorable class, Telco petitioned the Maricopa County Assessor pursuant to A.R.S. section 42–221(E) for a change of classification. The assessor acknowledged that Telco's commercial classification was erroneous, and the Department of Revenue concurred. For the 1986 tax year, the assessor reclassified Telco's property more favorably. Telco also asked for an adjustment of its tax bills for

**516**

the years 1983 through 1985. The assessor declined to act on this request.

Telco brought a special action against Maricopa County and the Department of Revenue seeking a refund pursuant to A.R.S. sections 11–505 to 11–506. The superior court dismissed Telco's complaint. On appeal, Division Two of this court reversed, rejecting the trial court's view that the claim for a refund was untimely because it had failed to file property tax appeals pursuant to A.R.S. sections 42–176, 42–245 and 42–246 by November 1 of each of the tax years in question. The court stated:

> A.R.S. §§ 42–176, 42–245, and 42–246 govern appeals from valuation and classification determinations of the county assessor or the board of tax appeals. The matter before us does not involve such an appeal. Telco does not assert that the county assessor or the board of tax appeals considered and refused to grant a more favorable property tax classification. Telco argues that it has satisfied the requirements of A.R.S. §§ 11–505 and –506, and complied with Title 42, and that Maricopa County has nevertheless declined to grant relief. A.R.S. §§ 11–505 and –506 provide a vehicle for taxpayer relief from overpayment of property taxes when both the county and the Department concur that overpayment has been made.

158 Ariz. at 537, 764 P.2d at 22.

Concerning A.R.S. section 11–506, the court stated:

> A.R.S. § 11–506 provides that once the Department verifies that an erroneous assessment was made resulting in overpayment of property taxes, the board of supervisors shall direct the county treasurer to grant a refund, provided the taxpayer submits a claim to the county treasurer within three years after payment of the tax. Accordingly, when the requirements of A.R.S. § 11–506 have been met, discretion no longer exists. Regarding these statutes, the Arizona Attorney General has stated:
>
> > [R]egardless of whether the overpayment is considered to be due to a billing error or mistaken assessment, we think that both A.R.S. §§ 11–505 and 11–506 are remedial in nature and that the Legislature intended to provide a mechanism whereby taxes which the county, the state, and the taxpayer all agree were erroneously collected, can be refunded. (Footnote omitted.)
>
> Ariz.Atty.Gen.Op. I80–144 (1980). A.R.S. §§ 11–505 and –506 were clearly designed to govern situations such as that presented in this case.

*Id.* at 539, 764 P.2d at 24.

On appeal in the instant case, Pima County and the Department attack the opinion in *Telco.* They observe that *Telco* did not address A.R.S. section 42–204(E). They further contend that *Telco* wrongly established section 11–506 as a procedure outside the property tax appeal system, unauthorized by statute, for obtaining judicial relief from the classification and valuation decisions of the taxing authorities.

In our opinion, the interpretation which Pima County and the Department place on *Telco* is not well founded. Arizona Revised Statutes section 42–204(E) provides:

> Any taxpayer dissatisfied with the valuation or classification of his property may appeal to the superior court only in the time and manner prescribed in § 42–176, subsections A, B and C or § 42–246, whichever is applicable.

Contrary to the argument of the County and the Department, *Telco's* interpretation of A.R.S. section 11–506 did not conflict with section 42–204(E) or render the property tax appeal process a nullity. By its terms, A.R.S. section 11–506 allowed a refund of taxes paid on an erroneous assessment only when the assessment is "verified by the Department of Revenue...." If the Department did not agree that the assessment was erroneous, the Taxpayer had no claim for relief under A.R.S. section 11–506. In that situation the Taxpayers' exclusive remedy is to pursue the property tax appeal process according to the procedures and time limits established by A.R.S. sections 42–176 or 42–246.

We also reject the argument of the County and the Department that the term

"erroneous assessment" in A.R.S. section 11–506 was limited to administrative or clerical errors that are clear on the face of the tax roll, and that it cannot encompass questions of valuation or classification. We agree with *Telco* that A.R.S. section 11–506 was a remedial statute. *See* 158 Ariz. at 539, 764 P.2d at 24. As such, it should be broadly construed. Moreover, as we said in *Fry v. Mayor and City Council of Sierra Vista*, 11 Ariz.App. 490, 495, 466 P.2d 41, 46 (1970):

> Assessment is the official estimate of the sums which are to constitute the basis of an apportionment of taxation and necessarily includes the valuation of property subject to taxation.

In our opinion, where property that was in fact used for agricultural purposes was valued on the tax roll as nonagricultural property, the result was an "erroneous assessment" within the meaning of that term in A.R.S. section 11–506. Thus, unless the amendments to A.R.S. section 11–506 effectively eviscerated *Telco,* the Taxpayers were entitled to a refund and the tax court should not have dismissed their special action.

## B. The Amendments to Section 11–506 Cannot Be Applied Retroactively

■ In 1991, while this case was pending on appeal, the legislature amended A.R.S. section 11–506. 1991 Ariz.Sess.Laws, ch. 303 provides:

> Section 1. Intent
>
> The purpose of §§ 2 through 5 of this act is curative in nature and is intended to clarify statutory intent and ratify historical administrative interpretation, and does not provide for any substantive change in the law.
>
> . . . .
>
> Section 8. Retroactivity.
>
> Sections 1 through 5 of this act apply retroactively to tax years beginning from and after December 31, 1985.

As amended by 1991 Ariz.Sess.Laws ch. 303, section 2, A.R.S. section 11–506 now provides:

> (A) If all or part of a property tax has been paid on an erroneous assessment after such assessment is first verified by the county assessor and then verified by the department of revenue, the county board of supervisors shall direct the county treasurer to grant a refund to the taxpayer, to the extent of the erroneous tax paid pursuant to such erroneous assessment, after correcting the tax roll, provided the taxpayer submits a claim on a form approved by the department to the county treasurer within three years after the payment of such erroneous tax. Such claim shall be processed in the same manner and subject to the provisions as provided in § 11–505.
>
> (B) For purposes of this section, an erroneous assessment is limited to a clerical or computational error or any other error not involving the exercise of discretion, opinion or judgment by the assessor or the department. This section does not apply to questions of valuation that can be appealed according to § 42–221 or 42–604. An erroneous assessment does not include an assessment that is uniformly made according to department of revenue guidelines for all similarly classified property.

As the record stands in this case, the Taxpayers have a substantial present property interest which qualifies for protection under the due process clauses of the state and federal constitutions. *See Maricopa County v. Superior Court,* 170 Ariz. 248, 823 P.2d 696 (1991). The basic question for resolution is whether the retroactive application of the amended statute would offend due process. The County and the Department assert that the first stage in analyzing whether a retroactive amendment to a statute is constitutional is to determine whether the amendment changes the law or merely clarifies it. If there is no change in the law, they argue, any contention that the amendment unconstitutionally affects vested substantive rights evaporates.

■ The amendment was more than a mere clarification of the law. Before the statute was amended, it meant what *Telco* said it meant. The proposition that one legislature can declare what an earlier legislature intended is a doubtful one. It is the language of the statute which governs, and the unexpressed intent of the legislature has no application. *Rio Rico Properties, Inc. v.*

*Santa Cruz County,* 172 Ariz. 80, 89, 834 P.2d 166, 175 (T.C.1992). The fact that a substantive change in policy is couched in "curative" language will not shield the change from substantive attack. *See id.* at 91, 834 P.2d at 177.

The next question is whether the right embodied in the statute was a substantive right or merely a procedural one. In many of the cases which bear on this question, the discussion of substantive versus procedural rights is intertwined with a discussion of when a right vests. To some degree, we repeat that pattern.

■ Substantive law creates and defines rights, while procedural law prescribes the method by which substantive law is enforced or implemented. *Daou v. Harris,* 139 Ariz. 353, 358, 678 P.2d 934, 939 (1984); *Allen v. Fischer,* 118 Ariz. 95, 96, 574 P.2d 1314, 1315 (App.1977). Section 11–506 did more than provide a procedure for implementing a preexisting right. The statute created the right to a refund of taxes paid on an assessment the County and the Department agree was "erroneous." This right was a substantive right. *See State Tax Comm'n v. Miami Copper Co.,* 74 Ariz. 234, 238, 246 P.2d 871, 875 (1952) (right to appeal is substantive right). The adoption of a restrictive definition of "erroneous assessment" within the meaning of section 11–506, 1991 Ariz.Sess. Laws ch. 303 section 2, redefines that substantive right. *See Rio Rico Properties,* 172 Ariz. at 91, 834 P.2d at 177.

The Taxpayers' substantive right was also a vested right. Perhaps the most instructive case on this point is *Hall v. A.N.R. Freight System, Inc.,* 149 Ariz. 130, 717 P.2d 434 (1986). In *Hall,* the question was whether Arizona's comparative negligence statute could be retroactively applied in a personal injury action that accrued prior to, but was filed after, the statute was enacted. The key issue was whether the new legislation unconstitutionally deprived the defendant of the defense of contributory negligence. The court acknowledged the general rule that statutes which retroactively affect substantive rights are prohibited and determined that the defense of contributory negligence is a matter of substantive law. The court held

that a right vests when it is actually assertable as a legal cause of action or defense, or is so substantially relied upon that retroactive divestiture would be manifestly unjust. *Id.* at 140, 717 P.2d at 444. The court ruled that the statute was not unconstitutional as applied to the defendant because the right to assert contributory negligence did not vest until the suit had been filed. *Id.* Clearly, if the rationale of *Hall* applies here, the Taxpayers' rights had vested because they had filed their claim pursuant to section 11–506 well before that provision was amended.

In counterargument, the County and the Department cite *Brown Wholesale Elec. Co. v. H.S. Lastar Co.,* 152 Ariz. 90, 730 P.2d 267 (App.1986). In that case, the statute in question subjected contractors' license bonds to claims by persons who furnished materials used in the direct performance on construction contracts. The statute was amended to require bond coverage only on claims arising from residential construction contracts. Brown Wholesale provided materials to a contractor before the effective date of the amendment, and the contractor used the materials on a nonresidential project after the amendment became effective. We held that Brown Wholesale's claim did not vest before the effective date of the amendment because the claim at that time was still contingent on the use to which the materials were to be put. *Id.* at 94, 730 P.2d at 271.

In discussing *Hall,* the opinion in *Brown Wholesale* referred to "a general rule of law that an action wholly dependent on the existence of a statute abates if the statute is repealed without a savings clause before judgment is final." *Id.* at 95, 730 P.2d at 272. The court also observed that Brown Wholesale's statutory right to proceed against the bond was not its only potential remedy, and thus, it had no vested right to recover against the bond. *Id.* at 96, 730 P.3d at 273.

The County and the Department say that the Taxpayers here, like the supplier of materials in *Brown Wholesale* when they filed their action, had only a contingent expectancy that the court would expand the holding in *Telco* to afford them relief. We do not agree. *Hall* clearly holds that a right vests "when it is actually assertable as a legal

cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust." 149 Ariz. at 140, 717 P.2d at 534. Here, the Taxpayers actively asserted their claim under section 11–506 and, in doing so, relied to some degree on the availability of relief under that statute as it existed before it was amended. We realize that at one point in time, the Taxpayers had another remedy by way of appeal. The fact that their own failure to perfect that appeal foreclosed that other remedy to them ought not also foreclose the availability of redress under the terms of section 11–506. We are, after all, dealing with a refund of money which the County and the Department concede ought never have been paid in the first instance. That being the case, it would be manifestly unjust to divest the Taxpayers of their right to relief. Cf. Rio Rico Properties, 172 Ariz. at 80, 834 P.2d at 166.

Finally, the County and the Department, again relying on *Brown Wholesale*, argue that the Taxpayers' right to pursue relief under pre-amendment section 11–506 never vested because it was created solely by statute. In view of the clear analysis in *Hall*, 149 Ariz. at 130, 717 P.2d at 434, the statement in *Brown Wholesale* that "an action wholly dependant on the existence of a statute abates if the statute is repealed without a savings clause before judgment is final" is mere dictum and ought not control the result in this case.

Another panel of this court very recently filed an opinion construing A.R.S. section 11–506 and the retroactivity of the amendments to that provision. See *S & R Properties v. Maricopa County*, 178 Ariz. 491, 875 P.2d 150 (App.1993). We agree with that opinion, but have not simply adopted it by reference because we thought it desirable to address the arguments of the parties as they were framed in this case. We note that in *S & R Properties*, the question of whether the taxpayers had a vested right was an open one because the Department of Revenue had not verified the erroneous assessment in that case. Here, that point is covered by the County Defendant's Response to the Special Action Complaint and is not an issue in the case.

## APPELLEES' ARGUMENTS REGARDING LACK OF JURISDICTION AND RES JUDICATA

■ As a cross-issue supporting the dismissal of the Taxpayers' Pima County tax appeal, the Department contends that the Pima County Superior Court lacked subject-matter jurisdiction in that action because the Taxpayers failed to pay their 1987 tax bill before it became delinquent. Similarly, Pima County appears to contend, as a cross-issue in support of the dismissal of the Taxpayers' special action, that the tax court lacked subject-matter jurisdiction because the Taxpayers did not file their action before November 1, 1987. In the original Opinion we filed in this case, we declined to address this issue because, applying *Bowman v. Board of Regents*, 162 Ariz. 551, 785 P.2d 71 (App.1989), and *Hibbs v. Chandler Ginning Co.*, 164 Ariz. 11, 790 P.2d 297 (App.1990), we believed that we lacked jurisdiction of the matter since the Department had not filed a cross-appeal. Since we issued that Opinion, Rule 13(b)(3) was added to the Arizona Rules of Civil Appellate Procedure effective December 1, 1992. It provides that "[t]he brief of the appellee may, without need for cross-appeal, include ... any issue properly presented in the superior court. The appellate court may affirm the judgment based on any such grounds."

The new rule applies to this case because it is clearly procedural in nature. See *State v. Warner*, 168 Ariz. 261, 812 P.2d 1079 (App. 1990) (purely procedural matters apply retroactively); and *State v. Birmingham*, 95 Ariz. 310, 390 P.2d 103 (1964) (the manner in which appeal is exercised is procedural).

■ We reject the claims that the courts had no jurisdiction of the Taxpayers' actions because the Taxpayers did not file their claim before November 1, 1987, and because they did not pay their taxes for 1987 until they became delinquent. We agree with the decision in *S & R Properties*, which says that A.R.S. section 11–506 is "a simple, alternative means of correcting undisputed assessment errors" and that as long as the taxpayer files a claim within three years of having paid an erroneous assessment, and the Department

verifies the error, the taxpayer is entitled to a refund. 178 Ariz. at 498–500, 875 P.2d at 157–159.

■ Finally, we reject the argument advanced by both the County and the Department that the stipulated dismissal of the Taxpayers' second Pima County action with prejudice operated to bar their claim under A.R.S. section 11–506 pursuant to the doctrine of *res judicata.* Two causes of action which arise out of the same transaction or occurrence are not the same for purposes of *res judicata* if proof of different or additional facts will be required to establish them. *Rousselle v. Jewett,* 101 Ariz. 510, 421 P.2d 529 (1966). In this case, a distinct and essential element of the Taxpayers' claim under A.R.S. section 11–506 is the proposition that the County concedes that the Department of Revenue has verified and concurred in the view that the Taxpayers' property was the subject of an erroneous assessment for 1987. These elements would not be necessary to establish the claim under A.R.S. section 42–204(C) for the recovery of an overpayment of the tax.

Our Opinion filed October 22, 1991 is vacated. The judgment of the Superior Court of Pima County dismissing the tax appeal for failure to join and serve an indispensable party is affirmed. The judgment of the tax court dismissing the special action is reversed, and that case is remanded with directions to grant the relief as requested by the Taxpayers.

GERBER, P.J., concurs.

LANKFORD, Judge, dissenting in part; concurring in part.

Although I find much with which to agree in the majority opinion, we part paths on this question: Did the amendment to A.R.S. section 11–506 violate due process by retroactively depriving taxpayers of a vested right?

The constitutional issue requires that we address three questions: (1) Do the taxpayers have a constitutionally protected interest? (2) If so, does the statutory amendment deprive them of that interest? (3) Is the deprivation of the interest fundamentally unfair and thus in violation of due process of law?[1] For this court to find a constitutional violation, the answer to all three questions must be "yes." We will not presume that a statute is unconstitutional, but it must affirmatively appear so. *State v. Ramos,* 133 Ariz. 4, 6, 648 P.2d 119, 121 (1982).

The threshold question is whether taxpayers have a constitutionally protected right. I agree with the majority that the taxpayers have a property interest in their money. If they lost money because they were erroneously taxed, they may recover their property. Tax statutes in addition to the one at issue here recognize that taxpayers may recover money lost because taxes were erroneously imposed. *See* A.R.S. §§ 42–178(F), 42–204.-01. This statutorily recognized interest in property is protected by the due process clause. *See Smotkin v. Peterson,* 73 Ariz. 1, 5, 236 P.2d 743, 745 (1951) (taxpayer's remedy of action for refund is adequate and does not violate due process); *cf. Maricopa County v. Superior Court (First Interstate Bank),* 170 Ariz. 248, 823 P.2d 696 (App.1991) (rejecting on other grounds a claim that denial of right to appeal property tax valuation was due process violation).

The next issue is whether the statutory amendment deprives the taxpayers of their property right. This question poses two subsidiary questions: (1) Does the statute erase their property right? (2) Does the statute indirectly deprive the taxpayers of their property right by destroying the remedies which effectuate that right?

The answer to the first question is clearly "no." The statute challenged here does not

---

1. Due process is guaranteed by the Fourteenth Amendment to the United States Constitution and by Article 2, § 4 of the Arizona Constitution. For present purposes, the due process protections of these provisions will be treated as substantively equivalent.

The majority opinion relies heavily on *Hall v. A.N.R. Freight System, Inc.,* 149 Ariz. 130, 717

P.2d 434 (1986). However, that decision was based not on due process but on Ariz. Const. Art. 18, § 5, which preserves the defense of contributory negligence for jury decision. Obviously, that provision is not implicated here and differs greatly from the due process clause.

give the state the power to retain taxpayers' money extracted by an unlawful tax. The amendment to section 11–506 speaks only to the single *remedy* —the particular action for refund—provided by that statute; it does not purport to abolish the *underlying right* to avoid an improper tax. The statute thus does not deprive taxpayers of a property right.

Nor did the Legislature indirectly deny taxpayers' rights by destroying their remedies. In general, legislation that restricts remedies is not unconstitutional so long as some reasonable remedy remains. 2 Norman J. Singer, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 41.06, at 377 (Sands 4th ed. rev. 1986). In contrast, legislation that retroactively abolishes a sole remedy, or all remedies, or that so burdens remedies that they become ineffectual, may be unconstitutional. *Id.* at § 41.09, at 395; Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 HARV.L.REV. 692, 711–12 (1960).

Which is true here? Did the amendment unconstitutionally abolish all of the taxpayers' remedies? Or did it permissibly limit a single remedy among several? On its face, the amendment affected only one remedy, that offered by section 11–506. The amendment did not abolish the remedy but merely limited its scope.

The 1991 legislation is constitutional because the taxpayers have other remedies from improper taxation, as evidenced by the existence of the other remedial statutes left untouched by the 1991 amendment of section 11–506. Indeed, as the majority points out the taxpayers first sought relief under other statutes but were unsuccessful.[2]

Thus, the statute did not violate due process by stripping away the only remedy for vindicating a property right. Instead, the Legislature merely limited the scope of one remedy, leaving other remedies which—if properly perfected—were well suited for vindicating the taxpayers' property rights. *Cf. Brown Wholesale Elec. v. H.S. Lastar Co.,* 152 Ariz. 90, 96, 730 P.2d 267, 273 (App.1986) (legislative repeal of particular remedy did not leave plaintiff without a remedy).

Although the conclusion that the statutory amendment did not deprive the taxpayers of their protected right to a refund is enough to affirm the judgment, a consideration of the third question posed by the constitutional issue is valuable because it confirms that result. That question is: Even if it were assumed that the amendment deprived taxpayers of their remedies, is that so fundamentally unfair that it violates due process? Subsumed in this question is the assumption that a right to refund existed prior to the 1991 amendment. If under the prior version of section 11–506 the taxpayers had no right to pursue a refund for an erroneous classification, then the amendment took nothing away from them and consequently cannot be condemned as "retroactive."

If the statutory amendment were truly retroactive, then it could be argued that it violated due process. *See Hall,* 149 Ariz. at 140, 717 P.2d at 444 ("[A] right vests … when it is actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust."). According to the *Hall* analysis, a right that has been asserted in a judicial action cannot be retroactively denied.

Did the right exist before 1991? The Legislature indicated in the amendment that a right to a refund for an erroneous classification never existed: "The purpose of sections 2 through 5 of this act is curative in nature and is intended to clarify statutory intent and ratify historical administrative interpretation, and does not provide for any change in the law." A.R.S. § 11–506 (1991), 1991 Ariz. Sess.Laws ch. 303. The 1991 amendment appears to be a negative reaction to *Arizona Telco Fed. Credit Union v. Department of Revenue,* 158 Ariz. 535, 764 P.2d 20 (App.

---

2. It was the failure of the taxpayers prior attempts to challenge the tax assessment and to obtain a refund that transformed their action under section 11–506 into their last remaining hope. The record before us indicates that section 11–506 was their "sole" remedy only in the sense that it was the last remaining remedy after the taxpayers either abandoned or failed to properly pursue their other remedies. Notably, the majority does not suggest that the 1991 legislative amendment abolished the sole remedy available to taxpayers for an unlawful tax.

1988), which held that the statute encompassed actions for refunds based on erroneous classifications. The Legislature regarded *Telco* as an erroneous interpretation of the earlier version of section 11–506 and corrected the mistake by amending the statute.

The legislative branch surely has the power to tell the judicial branch that judges have misconstrued a statute and extended it beyond its intended reach.[3] As a consequence, curative statutes such as this one are generally regarded as not violative of due process. Stephen R. Munzer, *A Theory of Retroactive Legislation*, 61 TEX.L.REV. 425, 468 (1982); *see, e.g., Darak v. Darak*, 210 Conn. 462, 556 A.2d 145, 150 (1989); *Rudewicz v. Gagne*, 22 Conn.App. 285, 582 A.2d 463, 465 (1990); *Hoben v. City of Minneapolis*, 324 N.W.2d 161, 163 (Minn.1982) (interpreting statutes as retroactive); *see also Graham v. Bodine Elec. Co.*, 782 F.Supp. 74, 76 (N.D.Ill.1992) ("In cases where Congress is correcting Supreme Court interpretations of a statute rather than creating new rights, the statute is frequently interpreted retroactively absent evidence of intent to the contrary."). Such amendments do not take away rights because they merely clarify the original statute rather than change its substance.

In short, the Arizona Legislature's amendment indicates that the *original* version of section 11–506 did *not* give the taxpayers the right to recover a refund for a tax based on an erroneous classification. Our Supreme Court in *State v. Sweet*, 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985) wrote: "It is ... clear ... that '[a]n amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act.'" (quoting *City of Mesa v. Killingsworth*, 96 Ariz. 290, 297, 394 P.2d 410, 414 (1964)).

For a court to insist that the State must provide a refund when the Legislature has declared that there is no such remedy and never has been such a remedy is to offer the taxpayers a windfall because if the original legislative intent had been honored by the courts, no "right" would have ever arisen. *See* Hochman, 73 HARV.L.REV. at 705. The 1991 clarifying amendment stated what the original legislation intended and did not change the *status quo ante*. The amendment thus did not retroactively abolish any rights.

However, not every statutory amendment that has retroactive effect is curative. I agree with the majority that a legislature may not shield substantive retroactive changes in the law by labeling them "curative." (Slip Opinion at 16). Nevertheless, the majority's response to this problem is far too sweeping. Its solution is to declare all avowedly curative statutes unconstitutional. This is not the law. Moreover, it concludes that the Legislature falsely or incorrectly characterized its own amendment as curative. This conclusion is not only unsupported by the record, it is wholly inconsistent with our longstanding recognition of a presumption of constitutional validity.

The courts have far less drastic means than this by which we can protect constitutional rights. Courts can and do distinguish between proper amendments and those that run afoul of the due process clause. For example, Congress obliterated an estimated $5 billion in employee claims in the late 1940's when it passed a statute[4] negating U.S. Supreme Court interpretations[5] of the Fair Labor Standards Act that had given rise to the claims. *See* Hochman, 73 HARV.L.REV. at 721–22; Ray H. Greenblatt, *Judicial Limitations on Retroactive Civil Legislation*, 51 NW.U.L.REV. 540, 554–56 (1957). Every one

---

**3.** The majority opinion expresses doubt that one legislature may declare the intent of another. (Slip Opinion at 15). If courts can interpret legislation, then why cannot the body which enacted the legislation also do so? The majority ignores that legislative intent is a collective, institutional intent that does not vary with the membership of the legislature.

**4.** The Portal to Portal Act, ch. 52, 61 Stat. 84 (1947).

**5.** *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local 123*, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944); *Jewell Ridge Coal Corp. v. Local 6167, UMW*, 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

of the circuit court decisions, and numerous district court and state court decisions, upheld the statute. Greenblatt, 51 Nw. U.L.Rev. at 555, n. 65. *See also, e.g., Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); *Ettor v. City of Tacoma,* 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773 (1913) (distinguishing between the permissible abolition of all remedies against the government and impermissible repudiation of the underlying governmental obligation).

The considerations that indicate to courts whether an amendment is truly curative include, for example, whether the amendment closely follows a judicial opinion interpreting the statute or a controversy about the statute's meaning, or instead alters a longstanding judicial or administrative interpretation. *See State v. Sweet,* 143 Ariz. 266, 269, 271, 693 P.2d 921, 924, 926 (1985); *State v. Barnett,* 142 Ariz. 592, 596, 691 P.2d 683, 687 (1984); *O'Malley Lumber Co. v. Riley,* 126 Ariz. 167, 169, 613 P.2d 629, 632 (App.1980) (O'Connor, J.); *Darak v. Darak,* 556 A.2d at 150; *Hoben v. City of Minneapolis,* 324 N.W.2d at 163. The former is the case here—the Legislature acted to correct our mistake in Telco—which strongly suggests that the amendment is curative.

We also may consider whether the Legislature provided explicit guidance about the nature of the amendment. In this case, our Legislature has told us as directly as possible that its amendment is curative. To hold otherwise, as the majority does, is to find that the Legislature attempted to deceive us. Implicit, too, is the majority's acceptance of the original statute as unambiguous. I cannot agree on either count. Even without the Legislature's statement of purpose, "a subsequent legislative change in the language of a particular statute . . . is a strong indication of the Legislature's original intent [citations omitted]. . . . [Because] [t]his modification occurred shortly after the original version of [the statute] was enacted . . . [it] is to us a clarification in order to reflect the intent of the original enactment . . ." *State v. Barnett,* 142 Ariz. at 596, 691 P.2d at 687.

Finally, the Legislature indicated that its amendment restored a prior administrative interpretation. The majority fails to cite any

evidence contrary to this legislative finding, which in my view is entitled to deference. *See Lancaster v. Arizona Bd. of Regents,* 143 Ariz. 451, 458, 694 P.2d 281, 288 (App.1984) ("Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction, especially where such a declaration coincides with and thus confirms the construction of a statute by those charged with its execution.").

Because the amendment has every indication of being truly curative, it is not unconstitutionally retroactive. That alone is enough to uphold the statute, but there is another reason for upholding it. Even if the legislation were a retroactive change in the substantive law, and even if it deprived taxpayers of a right to a refund, we must still consider whether the statute is fundamentally unfair and therefore must be stricken as unconstitutional.

The determination of fundamental fairness is the most difficult part of the analysis. There is no formula, no bright line beyond which a retroactive statute is unconstitutional. However, even a retroactive statute is entitled to a presumption of constitutionality. *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Moreover, the many decisions upholding retroactive legislation reveal that a statute does not violate due process merely because it is retroactive.

There are two potential methods of due process analysis. The first is the familiar rational basis test, a lenient standard of review which merely asks whether the legislature had a rational reason for its enactment. *E.g., Usery v. Turner Elkhorn Mining Co.,* 428 U.S. at 18–19, 96 S.Ct. at 2894 (retroactive liability of coal mine operators for disability to miners attributed to pneumoconiosis); *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 728–30, 104 S.Ct. 2709, 2717–18, 81 L.Ed.2d 601 (1984). Here, the 1991 amendment has a rational basis either in the administrative benefits of limiting the avenues of relief or in correcting the misimpression that section 11–506 provided a refund for erroneous classifications. In fact, the Legislature has expressly stated that its amendment comported with historical admin-

istrative interpretation, a fact entitled to great weight. *See* 2 Norman J. Singer, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 41.11, at 411 (Sands 4th ed. rev. 1986); Hochman, 73 HARV.L.REV. at 704–06. "The [Supreme] Court's favorable treatment of curative statutes is probably explained by the strong public interest in the smooth functioning of government. It is necessary that the legislature should be able to cure inadvertent defects in statutes or their administration by making what has been aptly called 'small repairs.'" Hochman, 73 HARV.L.REV. at 705.

The other method of due process scrutiny balances the government's interests against the individual's interest, with a particular emphasis on the fairness of the government's treatment of the individual. *See generally* Hochman, 73 HARV.L.REV. at 694–96. This includes consideration of the individual's reliance on the prior state of the law. *Id.* at 696. Even when an individual does rely on prior law, however, the statute is not necessarily invalid. *See generally* Munzer, 61 TEX. L.REV. 425 (discussing expectations theory). In particular, the pendency of a lawsuit, or even the existence of a judgment, does not invariably create such a reliance that the statute is inescapably invalid.[6] It is difficult to see, for example, how the taxpayers' use of their property would have been different simply because their property was subjected to a less favorable tax treatment in a single year out of many. "Moreover, some statutes can achieve their purpose only if applied to pending litigation. Examples of such legislation are curative statutes ... eliminating the

windfall which occasionally results from an unexpected judicial decision." Hochman, 73 HARV.L.REV. at 718. Some reliance is not fatal because even "[a] prospective statute may equally defeat reasonable expectations...." *Id.* at 693. Finally, it is settled that there is no right to be free from a tax. Retroactive taxation has been sustained almost uniformly against due process challenges. *Id.* at 706. Even when an already collected tax has been declared invalid, the government may severely limit recovery of a refund. *See Anniston Mfg. Co. v. Davis,* 301 U.S. 337, 349–53, 57 S.Ct. 816, 822–24, 81 L.Ed. 1143 (1937) (statute permissibly placed burden on taxpayer of proving it absorbed tax and had not shifted tax burden to others).

In this case, colorable arguments can be made on both sides of the proposition that the statute is invalid. If the record reflected that the taxpayers had foregone their other remedies in reliance on the availability of section 11–506, the amendment would at least appear to be less fair. But that is not what the record reveals. Instead, the taxpayers availed themselves of other avenues of relief but failed because of their own procedural missteps and turned to section 11–506 only as a last effort. At least under these circumstances, the Legislature has not treated these taxpayers so unfairly that the legislation violates due process of law.

Instead of focusing on the due process question of fundamental fairness, the majority emphasizes its belief that the section 11–506 refund procedure was a "vested right." The vested right characterization is not ana-

**6.** W. David Slawson, *Constitutional and Legislative Considerations in Retroactive Lawmaking,* 48 CAL.L.REV. 216, 249–50 (1960). *E.g., Bruner v. United States,* 343 U.S. 112, 116–17, 72 S.Ct. 581, 584, 96 L.Ed. 786 (1952) (Congress may withdraw court jurisdiction over pending employee actions for compensation); *Fleming v. Rhodes,* 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947) (state court judgments entitling landlords to evict tenants enjoined under Emergency Price Control Act). "The [Supreme] Court appears to have given little or no weight to the fact that the right affected by retroactive legislation has on occasion been asserted in litigation pending at the time of the enactment." Hochman, 73 HARV.L.REV. at 717.

Prior Arizona decisions are not to the contrary. The cases cited in *Hall,* 149 Ariz. at 140–41, 717

P.2d at 444–45, involve statutory interpretation, not due process. *See Allen v. Fisher,* 118 Ariz. 95, 574 P.2d 1314 (App.1977); *Gulf Homes, Inc. v. Gonzales,* 139 Ariz. 1, 676 P.2d 635 (App. 1983). It is one thing for a court to determine whether the legislature intended a statute to be retroactive; it is a larger step for a court to determine that retroactivity renders a statute unconstitutional. Moreover, *Allen* expressly recognizes that changes in procedure or remedies may be applied retroactively to pending proceedings unless the statute impairs "vested rights." 118 Ariz. at 96, 574 P.2d at 1315. *See also* Singer, *supra* at § 41.09, p. 396 ("[C]hanges in statute law which pertain only to procedure are generally held to apply to pending cases.").

lytical, but represents only a conclusion: due process would be violated if retroactivity were allowed. *See* Slawson, 48 CAL.L.REV. 216; Hochman, 73 HARV.L.REV. at 696; Greenblatt, 51 NW.U.L.REV. at 561; Gregory J. DeMars, *Retrospectivity and Retroactivity of Civil Legislation Reconsidered*, 10 OHIO N.U.L.REV. 253, 268 (1983); *see also* 16A AM.JUR.2D *Constitutional Law* § 670, p. 653 (1979) (citing cases at nn. 62, 63) (criticizing the "vested right" and "substantive or procedural" characterizations by courts). In other words, a statute is unconstitutional if the right affected has "vested." In my opinion, such a label should not substitute for accepted methods of due process scrutiny.

A right created by statute, however, may not be "vested" and thus may not be protected from legislative action. *See Brown Wholesale Elec. v. H.S. Lastar Co.*, 152 Ariz. 90, 95, 730 P.2d 267, 272 (App.1986). Thus, even if the majority's "vested right" analysis is accepted, it does not necessarily render the amendment invalid if the taxpayers' "right" was created by statute. *See Maricopa County v. Superior Court (First Interstate Bank)*, 170 Ariz. 248, 252, 823 P.2d 696, 700 (App.1991) (right to appeal from property classification exists only by force of statute).

For these reasons, I respectfully dissent from that portion of the majority opinion which reverses the tax court's decision.