NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TIMOTHY R. WRIGHT, *Plaintiff/Appellee*,

*v.*

AHMAD WALI MAILATYAR, et al., *Defendants/Appellants*.

No. 1 CA-CV 23-0046
FILED 12-21-2023

Appeal from the Superior Court in Maricopa County
No. CV2020-016778
The Honorable Sara J. Agne, Judge

**DISMISSED IN PART; AFFIRMED IN PART**

COUNSEL

Dorsey & Whitney LLP, Phoenix
By Isaac M. Gabriel, Julie P. Ibrahim
*Counsel for Plaintiff/Appellee*

Law Office of Timothy M. Collier PLLC, Phoenix
By Timothy M. Collier
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Paul J. McMurdie joined.

---

**T H U M M A**, Judge:

¶1 Defendants Ahmad and Edyta Mailatyar challenge a final judgment, entered after a jury trial, awarding damages and permanent injunctive relief to plaintiff Timothy R. Wright on his defamation claims. For the reasons set forth below, the Mailatyars' appeal is dismissed in part for lack of appellate jurisdiction, and the judgment is otherwise affirmed.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Wright owns and operates a residential rental business in Tempe. Ahmad Wali Mailatyar ("Wali") provided accounting and tax services for Wright from 2010 through early 2013.

¶3 In 2013, Wright sued the Mailatyars and their company, Pandora Holdings LLC, alleging they had improperly taken title to three of Wright's rental properties and refused to reconvey them. Wright prevailed and the three properties were titled in Wright's favor. Wright also was awarded more than $260,000 in compensatory and punitive damages, attorneys' fees and costs. Wright later obtained writs of execution on two other properties the Mailatyars owned, called the New River Property and the Journey Lane Property. Wright submitted successful credit bids on both properties at sheriff's sales and assigned his rights to a third party.

¶4 In January 2019, before either of the sheriff's sales, Wali created a YouTube channel called "Tiered Justice." On July 7, 2020, Wali posted a video on the channel titled "Episode 10: The Burglary Episode," where he accused Wright of burglarizing the New River Property. Wali also posted a link to the video, hosted on tieredjustice.com, on an existing Facebook group. Wali often posted on the Facebook group, asserting that Wright "stole" the New River and Journey Lane Properties and "scammed" him. Wali also created a website, where he posted links to several videos and, in an explainer for one of the videos, stated that Wright "burglarized our house in October 2018."

¶5          Wright sued the Mailatyars in December 2020, alleging defamation and defamation per se, among other claims. Wright sought damages and a permanent injunction that would: (1) require the Mailatyars to "remove any videos, websites, or internet posts/comments that contain false, misleading, or defamatory statements relating to Mr. Wright and his business, including without limitation, the Youtube Channel videos, Facebook Group, and Website;" and (2) bar the Mailatyars "from communicating, publishing, or disseminating any further false, misleading, or defamatory statements relating to Mr. Wright and his business."

¶6          Both sides moved for partial summary judgment. The court granted Wright's motion in part, finding that "the statements that Plaintiff burglarized Defendants' house" were defamatory per se. The case proceeded to a jury trial. At the close of Wright's case-in-chief, the Mailatyars orally moved for judgment as a matter of law. The court denied that motion, quoting Arizona Rule of Civil Procedure (Rule) 50(a) and 50(b). The court issued a minute entry confirming it had denied the Mailatyars' motion under "Rules 50(a), (b)."

¶7          After deliberation, the jury awarded Wright $125,000 in compensatory damages and $20,000 in punitive damages on the burglary statements. The jury also found the statements that Wright "stole" or "scammed" the Mailatyars out of the New River and Journey Lane properties were defamatory per se and awarded an additional $100,000 in compensatory damages and an additional $20,000 in punitive damages.

¶8          After the jury returned its verdict, the parties and the superior court discussed how to address Wright's permanent injunction request:

> [Mailatyars' Counsel]: And Your Honor, as far as the permanent injunction, do you want us to brief a little more or how do you want us to handle that? Or are you just going to make a decision?
>
> THE COURT: Are the parties both interested in briefing?
>
> [Wright's Counsel]: No. I'm not interested in briefing, no.
>
> THE COURT: Okay. I feel I have enough information.

[Mailatyars' Counsel]: Okay.

THE COURT: So I will take a proposed form of judgment though and any objections to it.

[Wright's Counsel]: On the [permanent injunction]?

THE COURT: Right. Can be briefed that way under Rule 58 procedures.

[Mailatyars' Counsel]: Okay.

Wright submitted a proposed form of judgment. The Mailatyars objected, contending "the scope of the permanent injunction is overly broad" and requesting "five . . . business days after the ruling is made by this Court on Plaintiff's claim for a permanent injunction, to more fully object . . . if necessary."

¶9 The court entered a final judgment that included the following injunction:

[The Mailatyars] . . . shall permanently remove and not republish any videos, websites, or internet posts/comments that the jury found to contain defamatory statements relating to Mr. Wright and his business, including without limitation, the following:

a. Each video uploaded on the Youtube channel named "Tiered Justice";

b. Youtube Video entitled "Episode 10 – The Burglary Episode" and any clips or portions thereof which may have been separately disseminated or posted on other websites;

c. All posts on Facebook or any other website accusing Mr. Wright of burglary or any other felony;

d. Facebook post by "Wali Mailatyar" dated January 15, 2020 relating to the [three properties at issue in the 2013 case];

4

e. Facebook post by "Wali Mailatyar" dated July 6, 2020 relating to [the New River Property];

f. Facebook post by "Wali Mailatyar" dated July 6, 2020 relating to [the Journey Lane property]; and

g. Website [publicly] available at www.tempeslumlord.com and all statements thereon that are substantially similar or duplicative of the statements above.

The court denied the Mailatyars' request for more time to raise additional objections. The Mailatyars filed a timely notice of appeal following the entry of the final judgment. This court has jurisdiction under A.R.S. § 12-2101(A)(1) (2023).[1]

## DISCUSSION

### I. A.R.S. § 12-2102(C) Limits the Scope of Review in This Appeal.

¶10 This court's "appellate jurisdiction is limited by statute." *Marquette Venture Partners II, L.P. v. Leonesio*, 227 Ariz. 179, 182 ¶ 6 (App. 2011). Generally, in cases tried to a jury, this court lacks jurisdiction to consider "the sufficiency of the evidence to sustain the verdict or judgment . . . unless a motion for a new trial was made." A.R.S. § 12-2102(C). While the Mailatyars orally moved for judgment as a matter of law at the close of Wright's case-in-chief, they did not renew that motion following the verdict under Rule 50(b) or move for a new trial under Rule 59. Typically, a Rule 50(a) motion does not satisfy § 12-2102(C). *Williams v. King*, 248 Ariz. 311, 317-18 ¶¶ 30-31 (App. 2020) (citing *Marquette*, 227 Ariz. at 183 ¶ 13); *see also* Ariz. R. Civ. P. 50(a)(1) (governing motions filed once "a party has been fully heard on an issue during a jury trial.").

¶11 At this court's direction, both sides provided supplemental briefs addressing the impact of § 12-2102(C). In their supplemental brief, the Mailatyars rely on *Marquette*, which noted that "[f]ederal cases have recognized an exception to the requirement to file a Federal Rule [of Civil Procedure] 50(b) motion when the trial court indicates such a motion is unnecessary." 227 Ariz. at 183, ¶ 16. For that proposition, *Marquette* cited *Best Brand Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578 (2d Cir. 1987). In *Best Brand*, the federal court held the plaintiff's failure to renew its Rule

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

50(a) motion under Rule 50(b) did not preclude review of the sufficiency of the evidence on appeal because (1) "the trial judge indicated that further motion practice was not needed" and (2) "the party opposing the motion . . . could not reasonably have thought, during presentation of the movant's defense case, that the movant's 'initial view of the insufficiency of the evidence had been overcome and there was no need to produce anything more in order to avoid the risk of judgment" as a matter of law. 842 F.2d at 587 (citation omitted).

**¶12**          *Best Brand* is distinguishable. The federal doctrine precluding appellate review of the sufficiency of the evidence absent a post-verdict motion is rule-based and is grounded in Federal Rule 50(b) and principles of fairness. *See Unitherm Food Systems, Inc. v. Swift-Ekrich, Inc.*, 546 U.S. 394, 401 (2006) ("[T]he 'requirement of a timely application for judgment after verdict is not an idle motion' because it 'is . . . an essential part of the rule, firmly grounded in principles of fairness.'") (quoting *Johnson v. New York, N.H. & H.R. Co.*, 344 U.S. 48, 53 (1952)). In Arizona, the doctrine is statutory, and this court only has that jurisdiction given to it by statute. *Campbell v. Arnold*, 121 Ariz. 370, 371 (1979).

**¶13**          Section 12-2102(C) does not exempt cases in which the superior court states or implies that post-verdict motions would be unnecessary or futile. If the Legislature intended to create such an exemption, it would have done so. *See, e.g.*, *Backus v. State*, 220 Ariz. 101, 106 ¶ 22 (2009). Indeed, this court recently held that an appellant must file a post-verdict motion even if it might be futile to preserve challenges to the sufficiency of the evidence because "[a] civil appeal is a statutory privilege and appellants must strictly comply with statutory and rule requirements." *Williams*, 248 Ariz. at 317 ¶ 31.

**¶14**          For these reasons, this court lacks appellate jurisdiction over those portions of the Mailatyars' appeal that challenge the sufficiency of the evidence supporting the verdict or judgment. *Marquette*, 227 Ariz. at 183-84, ¶¶ 13, 22; *see also* *Gabriel v. Murphy*, 4 Ariz. App. 440, 442 (1966) ("[A] motion for new trial must be made before the scope of the appeal may be enlarged to include the sufficiency of the evidence to sustain the verdict or judgment."). The Mailatyars raise four arguments barred by § 12-2102(C).

**¶15**          First, the Mailatyars contend the jury did not follow the jury instructions for defamation and defamation per se. They argue the jury failed to consider (1) that none of the statements at issue "allege[d] a crime and/or impute[d] that [Wright] is unfit to conduct his business as a landlord" or (2) that the statements were not actionable because they were

either true or hyperbole. As noted above, the jury found the statements were defamatory per se. The Mailatyars cannot now argue the jury lacked sufficient evidence to reach that conclusion.

¶16 Second, the Mailatyars contend Wright did not prove damages, arguing he "presented absolutely nothing in any form of an amount. Not a single revenue report, not a single witness, not a single credit application from a prospective renter who later decided not to rent, specific houses that were not rented, not a single name." This argument challenges the sufficiency of the evidence supporting the jury's damages awards and is barred.

¶17 Third, the Mailatyars contend the jury did not apply the correct standard in awarding punitive damages. Specifically, they contend Wright presented no evidence to show they "knew that the statements regarding the alleged burglary, or the statements regarding their properties being stolen or scammed out of, were false or acted in reckless disregard of whether the statement was true or false." They also contend the jury "failed to take into consideration what [they] experienced and knew." These are challenges to the sufficiency of the evidence supporting the verdict and are barred.

¶18 Fourth, and finally, the Mailatyars contend the jury failed to follow the jury instructions in awarding damages. This argument hinges on their contention that Wright failed to prove damages. Section 12-2102(C) bars considering these arguments.

## II. The Mailatyars' Challenges to the Permanent Injunction Can Be Considered on Appeal.

¶19 The Mailatyars raise three challenges to the permanent injunction: (1) the court entered it without additional briefing, (2) Wright had an adequate remedy at law and (3) its terms are overbroad. It is far less clear whether § 12-2102(C) bars consideration of these issues.

¶20 While the permanent injunction, as an equitable remedy, was not part of the jury verdict, it was in the final judgment. Section 12-2102(C), therefore, would seem to apply. But this court has held that "in an equity action in which the trial court sits with an advisory jury, a motion for a new trial is not a condition precedent to the vesting of jurisdiction in this court to determine the appeal on the merits." *Richardson v. Casey*, 6 Ariz. App. 141, 142–43 (1967). Furthermore, § 12-2102(C) does not bar appellate review if "the court made factual determinations sitting without a jury." *S & R Properties v. Maricopa Cnty.*, 178 Ariz. 491, 504 (App. 1993).

¶21        The superior court did not use an advisory jury on Wright's injunctive relief request, but it appears the court relied on the jury's liability verdict in determining whether to grant a permanent injunction. And neither side disputes that whether to grant an injunction and the scope of any such injunction was an equitable remedy for the court (not the jury) to decide. *See* A.R.S. § 12-1801 (authorizing "judges of the superior court" to grant injunctive relief); *Ahwatukee Custom Estates Management Ass'n, Inc. v. Turner*, 196 Ariz. 631, 635 ¶ 9 (App. 2000) ("An injunction is an equitable remedy which allows the court to structure the remedy so as to promote equity between the parties.") (citation omitted). In doing so, the superior court had to consider the trial evidence to determine whether Wright met the equitable criteria for injunctive relief. *See, e.g.*, *Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Turner*, 196 Ariz. 631, 635 ¶ 9 (App. 2000). The court, therefore, made fact determinations independent of the jury. *S & R Properties*, 178 Ariz. at 504. Thus, section 12-2102(C) does not preclude appellate review of Mailatyars' challenges to the permanent injunction.

### III.    The Mailatyars' Challenges to the Permanent Injunction Fail.

¶22        A decision to grant injunctive relief is reviewed for an abuse of discretion. *Cnty. of Cochise v. Faria*, 221 Ariz. 619, 621 ¶ 6 (App. 2009).

¶23        The Mailatyars first contend the court erred by granting the permanent injunction without receiving additional briefing. They cite no authority suggesting the court had to grant a request for additional briefing, and this court is aware of none. Accordingly, this argument fails.

¶24        The Mailatyars also contend injunctive relief was improper because the jury awarded damages. Prevailing on a damages claim does not automatically bar injunctive relief. *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 65 ¶ 10 (App. 2011). Indeed, "even if some damages may be proved and recovered, injunctive relief may be appropriate if those damages are inadequate to address the full harm suffered." *Id.* at 65 ¶ 11. Here, the court found the damages award was "insufficient to make [Wright] whole, particularly if [the Mailatyars] are permitted to persist in publishing all the same statements and content that the jury found defamatory per se." Thus, the Mailatyars' contention that "obtaining a monetary award means [Wright] had an adequate remedy at law" fails.

¶25        The Mailatyars contend the permanent injunction is overbroad. When interpreting a judgment, this court seeks to adopt a construction that supports it, rather than destroys it. *Title Ins. Co. of*

*Minnesota v. Acumen Trading Co., Inc.*, 121 Ariz. 525, 526 (1979). Because the injunction bars the Mailatyars from "republishing" certain statements, it may be a prior restraint on speech. *See Alexander v. United States*, 509 U.S. 544, 550 (1993) ("permanent injunctions . . . are classic examples of prior restraints"). Prior restraints are "the most serious and least tolerable infringement on First Amendment rights." *Phoenix Newspapers, Inc. v. Otis*, 243 Ariz. 491, 495 ¶ 13 (App. 2018) (citation omitted). Such orders are subject to a heavy presumption against constitutional validity and are proper only if narrowly tailored to achieve a compelling state interest. *Id.* at 495-96 ¶ 14.

¶26        The Mailatyars first challenge the requirement that they "permanently remove and not republish any videos, websites, or internet posts/comments that the jury found to contain defamatory statements relating to Mr. Wright and his business." The statements the jury found defamatory are listed in the verdict forms, and the Mailatyars concede that "the actual statements found to be defamatory on any platform are fair game to be removed." Thus, this provision does not, as the Mailatyars now contend, "require [that] Facebook be permanently removed."

¶27        The Mailatyars also contend subparagraph (a) is overbroad because it obligates them to remove all videos on "Tiered Justice" when only one contained "statements found to be defamatory in this case" and "some content did not even have to do with [Wright]." Again, the initial paragraph modifying subparagraph (a) only requires them to remove "videos, websites, or internet posts/comments that the jury found to contain defamatory statements." If there are videos on "Tiered Justice" that do not contain such statements, those videos would not fall within the scope of the injunction.

¶28        The Mailatyars also contend subparagraph (g) is overbroad. At first glance, this subparagraph appears to require a takedown of the website and the removal of "all statements thereon that are substantially similar or duplicative of the statements above." But if the court directed the Mailatyars to take down the entire website, there would be no reason to separately direct them to take down particular statements that appear on the site. Thus, subparagraph (g), like subparagraph (a), applies to "videos, websites, or internet posts/comments that the jury found to contain defamatory statements relating to Mr. Wright and his business." Thus, it only requires the Mailatyars to remove any such statements and "substantially similar or duplicative" statements that appear on the website. *See Paxton v. McDonald*, 72 Ariz. 378, 382-83 (1951) ("Where a judgment is susceptible of two interpretations, that one will be adopted

which renders it the more reasonable, effective, and conclusive and which makes the judgment harmonize with the facts and law of the case and be such as ought to have been rendered."). For these reasons, the Mailatyars' contention that the permanent injunction is overbroad fails.

## IV.    The Mailatyars' Evidentiary Challenges Fail.

**¶29**      The Mailatyars also challenge several evidentiary rulings. Section 12-2102(C) does not bar review of evidentiary rulings "regardless of whether they were presented to the lower court in a motion for a new trial." *Marquette*, 227 Ariz. at 182 ¶ 7 (citation omitted). This court, however, will not disturb the superior court's rulings absent an abuse of discretion resulting in prejudice. *Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, 580 ¶ 9 (App. 2003).

### A.    Pandora Holdings Case Evidence.

**¶30**      The Mailatyars broadly argue the superior court erred in admitting evidence from the Pandora Holdings case. They correctly note that Wright moved in limine to preclude them from "disputing the underlying findings of facts and conclusions of law" in the Pandora Holdings case, or "asserting that any post-Judgment execution, including sheriff's sales, were legally improper." But they opposed that motion, arguing they should be allowed to "testify that they do not agree with those outcomes, and the reasons why."

**¶31**      The court denied Wright's motion in limine "without prejudice to specific trial rulings." It thus did not preclude any Pandora Holdings evidence before trial. And while the Mailatyars contend Wright "was able to discuss all aspect[s] of the [Pandora Holdings] case and enter documents into evidence over objection," they did not object to any of the evidence they cite in their opening brief for this proposition. *See State v. Lichon*, 163 Ariz. 186, 189 (App. 1989) ("Counsel may not sit back and allow error to occur when a prompt objection might have allowed the court to cure the problem."); Ariz. R. Evid. 103(a)(1) (requiring timely, specific objection to preserve a claim of error in admitting evidence).

**¶32**      The Mailatyars also contend the jury's damages awards were "almost identical" to damages awarded in the Pandora Holdings case and a related bankruptcy case, speculating that the jury simply re-awarded those damages. Absent evidence of passion or prejudice, neither of which the Mailatyars attempt to show, the jury's damages awards will not be

disturbed on appeal. *See Starkins v. Bateman*, 150 Ariz. 537, 548 (App. 1986) (citing *Larriva v. Widmer*, 101 Ariz. 1, 7 (1966)).

### B. Trial Exhibits 22, 26, 34-37.

¶33 The Mailatyars contend Wright improperly revoked a stipulation to admit trial Exhibits 22, 26 and 34-37, none of which were admitted at trial. They cite an email from Wright's counsel to the court, notifying it that the parties had stipulated to these exhibits, among others, which the court then approved. Wright's counsel later emailed, stating that there was a "miscommunication" and clarified that "only exhibits 3, 4, 6, 12, 21, 23-29 and 31-32 are stipulated to for the parties' respective cases in chief." The Mailatyars' counsel maintained there was no miscommunication.

¶34 The superior court, stating that it did not have "the emails evincing a Rule 80(a)(1) agreement of counsel," vacated its approval of the stipulation but invited the parties to "submit additional information regarding any agreement reached." Almost immediately, the Mailatyars' counsel responded that he was "going to bring the attached to Court this morning for your review to see if the emails therein constitute a binding agreement pursuant to Rule 80(a)." The copy of this email in the record, however, does not have any attachments. The Mailatyars do not point to where the attachments can be found in the record; they instead cite an excerpt of the discussion among counsel and the court before the first day of trial. The superior court reviewed the attachments and determined that

> [t]he Parties' emails both in this string and among themselves differ as to what was being stipulated, and what was originally submitted to the Court as the Parties' stipulation appears to be actually only a copy and paste of just [the Mailatyars'] proposed stipulation.

On that basis, the court determined there was no "meeting of the minds sufficient to hold [Wright] to a Rule 80(a) agreement" as to the above-listed exhibits. Because the record does not contain the attachments the court reviewed, there is no basis to conclude the court erred in this conclusion, and, as a result, vacating its approval of any purported stipulation. *See Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995) ("When a party fails to include necessary items, we assume they would support the court's findings and conclusions.").

### C.      Victoria Perez and Alexx Canale Testimony.

**¶35**      The Mailatyars challenge the exclusion of testimony by Victoria Perez and Alexx Canale. This court reviews these exclusionary rulings for an abuse of discretion. *Zimmerman v. Shakman*, 204 Ariz. 231, 235, ¶ 10 (App. 2003).

### 1.      Victoria Perez.

**¶36**      The court excluded Perez' testimony based on nondisclosure. The court must exclude a witness who is not timely disclosed absent a showing of either good cause or that the failure to disclose caused no prejudice. Ariz. R. Civ. P. 37(c); *Jones v. Buchanan*, 177 Ariz. 410, 414 (App. 1993).

**¶37**      The Mailatyars apparently first disclosed Perez as a trial witness in the joint pretrial statement. There, they said she would "testify regarding all matters in the Complaint, her Answer and Counterclaim, the Facebook Group, and any other matters about which she has personal knowledge."

**¶38**      The Mailatyars contend they did not have to disclose her earlier because Wright listed her as a witness in his disclosures. Wright listed Perez as a potential trial witness about a week before trial in his final supplemental disclosure statement. He contends he only listed Perez as a potential trial witness because she was a named defendant. But he and Perez settled their claims against one another in September 2021; as such, he contends he had no reason to believe the Mailatyars would call her at trial. And he did not list Perez as a trial witness in the joint pretrial statement.

**¶39**      The fact that Wright disclosed Perez as a witness in his disclosures does not excuse the Mailatyars' obligation to timely disclose their intent to call Perez as a trial witness or detail her intended trial testimony, nor does it authorize them to cut and paste Wright's disclosures and claim them as their own in a joint pretrial statement. *See* Ariz. R. Civ. P. 26.1(a)(3) (requiring that "each party must disclose in writing . . . the name, address, and telephone number of each witness whom the disclosing party expects to call at trial"); *see also Rivers v. Solley*, 217 Ariz. 528, 532 ¶ 23 (App. 2008) ("[T]he obligation to disclose under Rule 26.1 and the related discovery rules . . . is non-delegable."). On this record, the court did not abuse its discretion in precluding Perez from testifying based on nondisclosure. *See Estate of Brady v. Tempe Life Care Village, Inc.*, 254 Ariz. 122, 125-26 ¶ 16 (App. 2022) ("Where a firm trial date has been set, [f]actors

supporting the exclusion of undisclosed evidence gain strength as the trial nears.") (citations and quotations omitted).

## 2.    Alexx Canale.

¶40    The superior court excluded Canale's testimony on two grounds. It first found the Mailatyars did not disclose "her 'address, and telephone number . . . and description of the substance—and not merely the subject matter' of her testimony." It also concluded Canale's testimony likely would be irrelevant because her testimony related to the burglary statements, which the court had ruled were defamatory per se.

¶41    The Mailatyars argue on appeal that Canale's testimony was "crucial to describing the reputation of [Wright]" and "would have corroborated her confession [to burglarizing the Mailatyars' home with Wright] and identified herself in [the] Episode 10 [video]." But they only disclosed that Canale would "testify about her employment with [Wright], her dealings and contact with [Wright], the burglary of [the Mailatyars'] home and its connection with [Wright], and any other matter relevant to the litigation."

¶42    The Mailatyars argue their disclosure was adequate because "Wright was deposed, was asked questions about Ms. Canale, recognized her right away as his former employee, and [was] able to watch the video where she confesses to being at [the Mailatyars'] home with [him]." While disclosure can occur in a deposition, the Mailatyars cite nothing to show they disclosed their intent to call Canale to testify when she was deposed. *Cf. Solimeno v. Yonan*, 224 Ariz. 74, 80 ¶ 23 (App. 2010) (rejecting argument that information would have been disclosed at deposition "if opposing counsel had simply asked the correct questions"); *Norwest Bank (Minnesota) v. Symington*, 197 Ariz. 181, 186 ¶ 18 (App. 2000) (rejecting argument that opponent would have found nondisclosed evidence "if [he] had been diligent"). They also do not show they timely disclosed their intent to have Canale testify about Wright's reputation. On this record, they have shown no abuse of discretion in excluding Canale's testimony.

## D.    Episode 10.

¶43    The Mailatyars also challenge the exclusion of the "Episode 10" video, which they say contained "the alleged defamatory statements regarding the burglary." They argue the jury should have been allowed to view the video because the superior court had a chance to view it when it considered Wright's motion for partial summary judgment. They cite no authority suggesting evidence offered in support of a summary judgment

motion must be admitted into evidence at trial. Thus, they have shown no error on this point.

## CONCLUSION

**¶44**        This appeal is dismissed in part for lack of jurisdiction. The judgment otherwise is affirmed. Wright may recover his taxable costs incurred in this appeal upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA